[Civ. No. 49985. First Dist., Div. One. Sept. 23, 1982.]

BONUS-BILT, INC., Cross-complainant and Appellant, v.
UNITED GROCERS, LTD., Cross-defendant and Respondent.

430

432

COUNSEL

Michael P. Bradley, John H. Feeney and Hunkeler, Murphy & Pearson for Cross-complainant and Appellant.

Robert G. Heywood and Hanna, Brophy, MacLean, McAleer & Jensen for Cross-defendant and Respondent.

OPINION

**BANCROFT, J.**\*—Bonus-Bilt, Inc. appeals from a summary judgment in favor of respondent United Grocers, Ltd. (United Grocers). In the underlying action, plaintiff Murphy (Murphy), an employee of United Grocers brought suit for damages arising from injuries he sustained when a loaded cart fell upon him from the tailgate apparatus of a truck being unloaded at United Grocer's premises. Murphy's suit alleged

---

\*Assigned by the Chairperson of the Judicial Council.

defendants-appellants Bonus-Bilt (Bonus-Bilt) and Villata Truck Equipment Co., the distributor of the truck tailgate, were liable under product liability, implied liability and negligence theories.

United Grocers intervened in Murphy's action to recover workers' compensation benefits it paid. Bonus-Bilt cross-complained and specifically sought indemnity against United Grocers alleging that United Grocers had participated in the design and manufacture of the subject frozen food cart for the purpose of putting said carts into the stream of commerce.

United Grocer's demurrer to Bonus-Bilt's first amended cross-complaint on the basis of its claimed immunity as an employer under the Labor Code was overruled and United Grocers filed its answer.

After certain discovery was completed, United Grocers moved for summary judgment. The respective contentions of the parties, supported by deposition testimony on behalf of United Grocers and the statement of the president of Bonus-Bilt presented the question whether there was a triable issue of fact as to the theory of Bonus-Bilt's cross-complaint that United Grocers was not only Murphy's employer but also, by virtue of the dual capacity doctrine, a participant in the manufacturing process which placed the carts in the stream of commerce. We believe there is no such triable issue of fact. Accordingly we affirm the grant of summary judgment in favor of United Grocers.

## I

United Grocers contended essentially that it was not involved in the manufacturing process, that to the extent it participated in the design of the carts it was not so involved for the purpose of placing the carts into the stream of commerce and that it did not place the carts in the stream of commerce. We are thus called upon to evaluate the documentary presentations the respective parties made before the trial judge in the light of the applicable law.

## II

Employers are immune from liability for civil damages to employees injured on the job through application of Labor Code sections 3600 and 3601. These sections provide that an employer's workers' compensation liability for industrial accidents is "in lieu of any other liability

whatsoever to any person'' (Lab. Code, § 3600),[1] and is "the exclusive remedy for injury or death of an employee against the employer.'' (Lab. Code, § 3601.)[2]

Our courts have allowed this "exclusivity of remedy'' immunity to be breached where the employer occupies a "dual capacity'' with respect to its employees. (See generally 65 Cal.Jur.3d, Work Injury Compensation, § 25; 2 Witkin, Summary of Cal. Law (8th ed. 1982 supp.) § 50A.) Bonus-Bilt's cross-complaint in the instant case alleges that United Grocers occupied such a *dual* capacity with reference to its injured employee herein. The immunity of Labor Code sections 3800 and 3801 extends to cross-complainants for indemnity by virtue of Labor Code section 3864.[3]

## III

The seminal California dual capacity doctrine is *Duprey* v. *Shane* (1952) 39 Cal.2d 781 [249 P.2d 8], in which our high court held, in an exception to the exclusive remedy rule, that a doctor could be sued for malpractice where he negligently treated his own employee who suffered an industrial injury for which she received workers' compensation benefits. The court found that Duprey's employer, a doctor, was "a person other than the employer'' within the meaning of section 3852 of the Labor Code[4] and therefore amenable to his employee's tort cause of

[1]Labor Code section 3600 provides in pertinent part: "Liability for the compensation provided by this division, in *lieu of any other liability whatsoever to any person* except as provided in Section 3706, shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation occur: [¶] (a) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division. [¶] (b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment. [¶] (c) Where the injury is proximately caused by the employment, either with or without negligence. . . . .'' (Italics added.)

[2]Labor Code section 3601, subdivision (a) provides in pertinent part: "Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is, except as provided in Section 3706, the *exclusive remedy* for injury or death of an employee against the employer . . . .'' (Italics added.) Section 3706 has no application in the instant case.

[3]Labor Code section 3864 provided: "If an action as provided in this chapter prosecuted by the employee, the employer, or both jointly against the third person results in judgment against such third person, or settlement by such third person, the employer shall have no liability to reimburse or hold such third person harmless on such judgment or settlement in absence of a written agreement so to do executed prior to injury.''

[4]At the date of the injury Labor Code section 3852 provided, as relevant herein, "The claim of an employee for compensation does not affect his claim or right of action for all damages proximately resulting from such injury or death against any person other than the employer.'' (Italics added.)

action. In 1972, the Supreme Court decided the case of *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616 [102 Cal.Rptr. 815, 498 P.2d 1063] and allowed an action by the injured employee against the employer's insurance carrier for its deceitful conduct in handling the investigation of the employee's compensation claim.

Whether on the theory of malpractice, as in *Duprey* v. *Shane, supra,* 39 Cal.2d 781, of intentional misconduct as in *Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d 616, or on the theory of strict product liability, the employers' traditional "exclusivity of remedy" immunity has not been allowed to serve as a shield against liability in appropriate cases. (Cf. *Douglas* v. *E. & J. Gallo Winery* (1977) 69 Cal.App.3d 103 [137 Cal.Rptr. 797]; *Shook* v. *Jacuzzi* (1976) 59 Cal.App.3d 978 [129 Cal.Rptr. 496].)

In *Shook* v. *Jacuzzi, supra,* 59 Cal.App.3d 978, employees of a designer and manufacturer of a machine used in connection with automobile injuries failed in their direct suit against their employer for injuries allegedly arising from defects in the machine when the appellate court found that the employer neither sold the machine nor placed it in the stream of commerce.

However, in *Douglas* v. *E. & J. Gallo Winery, supra,* 69 Cal.App.3d 103, a direct suit by an employee was permitted on the theory that the employer occupied a dual capacity in that the article allegedly responsible for the injury was manufactured for sale to the general public and was intended to be placed in the stream of commerce.

The *Douglas* court said: "We limit the holding of this case to a defendant who engages in *manufacturing for sale* to the general public. A single or occasional disconnected act does not constitute engaging in such manufacturing. The defendant who designs or manufactures a product *for his own use* and subsequently does sell an extra one of the products to his neighbor or to a similar business is not thereby subjected to manufacturers' liability when his own employee is injured in using the retained product. On the other hand, manufacturers' liability clearly arises where plaintiff employee is injured in using a product designed and manufactured by his employer *primarily for sale to the general public* and only incidentally used in the defendant's other activities. In between these extremes, the matter must be resolved on the facts of the particular case. The proper standard for determining whether a defendant is engaged in manufacturing so as to make applicable the manufacturers' liability imposed hereunder is the exercise of judgment on a case by case basis to decide if the manufacturing by the particular defendant is such as

to justify the conclusion that it is part and parcel of an activity which occupies the effort, attention and time of the defendant for the purpose of possible profit on a continuing basis." (*Douglas* v. *E. & J. Gallo Winery, supra,* 69 Cal.App.3d 103, 113, italics added; see *Moreno* v. *Leslie's Pool Mart* (1980) 110 Cal.App.3d 179 [167 Cal.Rptr. 747].)

In November 1981, our Supreme Court reversed the trial court's granting of a summary judgment motion in a dual capacity case involving a route salesman allegedly injured by a fire at the premises of a customer arising from his employer's manufacture of flammable gas. (*Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268 [179 Cal.Rptr. 30, 637 P.2d 266].)

In a comprehensive opinion, assigned Justice Staniforth traced the history of the dual capacity versus the exclusivity doctrines and, in reliance upon *D'Angona* v. *County of Los Angeles* (1980) 27 Cal.3d 661 [166 Cal.Rptr. 177, 613 P.2d 238], stated: "The purpose of the Act was to compensate for losses resulting from the risks to which the fact of employment in the industry exposes the employee. Liability under the Act is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment and because the injury arose out of and in the course of the employment. If the duty flows solely from the employment relationship and the injury 'arises out of' and 'during the course of' that employment, then the recited policy considerations behind the exclusive remedy in workers' compensation mandating that the employer be immune from tort liability have viability. *If, however, an additional concurrent duty flows from an 'extra' employer status or a relationship that is distinct from that of employer-employee and invokes a different set of obligations, then a second capacity arises and the employer status is coincidental. The employer should then be treated as any third party tortfeasor, not immune from a common law tort action.*" (*Bell* v. *Industrial Vangas, Inc., supra,* 30 Cal.3d 268, 277, italics added.)

The *D'Angona* case, upon which Justice Staniforth relied in the *Bell* case, involved a physical therapist employed by a county hospital who received a workers' compensation award for a compensable disease arising out of and in the course of her hospital employment. She sued the county hospital and the doctors who treated her there for alleged negligent treatment aggravating her occupational disease condition.

In reversing the judgment of dismissal, our high court, in an opinion written by Justice Mosk, stated: "Underlying *Duprey* is the rationale that any injury arises from a relationship which is distinct from that of

employer and employee and invokes a different set of obligations than the employer's duties to its employee, there is no justification for shielding the employer from liability at common law. [¶] Larson declares that the decisive test of dual capacity is whether the nonemployer aspect of the employer's activity generates a different set of obligations by the employer toward the employee. Thus, since a doctor's obligation toward his patient arises because he undertakes to render medical treatment, if he treats an employee rather than paying another for treatment he should be liable as a doctor rather than as an employer. (2A Larson, Workmen's Compensation Law (1976) *supra,* § 72.80, pp. 14-117, 14-118.) The same rule should apply, according to Larson, to a carrier which instead of paying for medical treatment, directly performs such services. (Larson, Workmen's Compensation Insurer as Suable Third Party (1969) Duke L.J. 1117, 1136.)'' (*D'Angona* v. *County of Los Angeles, supra,* 27 Cal.3d 661, 666-667.)

■ The *Dupree* and *D'Angona* rationale, declared to be decisive by Larson, and approved in the recent *Bell* case, is that if any injury arises from a relationship which is distinct from that of employer and employee and invokes a different set of obligations than the employer's duties to its employee there is no justification for shielding the employer from liability.

The teaching of the *Douglas* case is that, as applied in the manufacturing-for-sale setting, such as was involved in *Douglas* and in the instant case, liability should not be imposed upon the designer or manufacturer of a product for his own use even though he sells one to a neighbor or a similar business, but ''. . . liability clearly arises where plaintiff employee is injured in using a product designed and manufactured by his employer *primarily for sale to the general public* and only incidentally used in the defendant's other activities.'' (*Douglas* v. *E. & J. Gallo Winery, supra,* 69 Cal.App.3d 103, 113.) It must be noted, however, that the *Douglas* court expressly limited its holding and that in the *Bell* case the dissenting opinion of Justice Richardson, concurred in by Justice Mosk, in disapproving the *Douglas* rationale also quoted Professor Larson as characterizing *Douglas* as an '' 'unsound [application] of the dual-capacity concept.' '' (*Bell* v. *Industrial Vangas, Inc., supra,* 30 Cal.3d 268, 287.)

In the instant case there is no contention that United Grocers is a manufacturer. It is contended, and not denied, that United Grocers requested certain design modifications be incorporated in its carts—*not* for sale but for its own use.

## IV

Applying the foregoing principles to the instant proceeding, we observe preliminarily that the first amended cross-complaint of Bonus-Bilt alleged that United Grocers negligently designed the cart for use and distribution in the stream of commerce, and distributed defective carts into the stream of commerce for use by the general public. In support of its motion for summary judgment, United Grocers provided highlighted extracts from depositions of five United Grocers' employees regarding the carts, their design, purchase and use. Bonus-Bilt submitted, in support of their opposition the two-page declaration of the president of Bonus-Bilt. The injured plaintiff submitted, through counsel, his own declaration and a portion of his deposition in opposition to the motion for summary judgment.

The most favorable view of Bonus-Bilt's presentation derived from the summary judgment documentation is that: 1) A metal fold-up cart, designed and manufactured by Bonus-Bilt for frozen food delivery, fell loaded from a truck upon Murphy, a United Grocer's employee, allegedly on account of a defective tailgate; 2) the cart was approximately 30 inches in length and in width and 6 feet high; 3) in 1970 or 1971 United Grocers sought and achieved modifications in the carts it purchased for use in delivering food from its frozen food warehouse to its retail customers;[5] 4) the cart was defective on account of the design changes; 5) the president of Bonus-Bilt was informed by two United Grocers employees that "The fold-up carts are loaded with frozen foods and placed on a truck for delivery to United Grocers customers. The fold-up carts are left with the customer to be picked up later. It is common for some of the carts not to be returned to United Grocers by their customers and in fact United Grocers has made some replacement orders of fold-up carts to place carts lost in the course of United Grocers' business"; and 6) an inference arises that United Grocers used the carts with the intent to make a profit.

Still, no showing is made that United Grocers either stepped out of its proper role as employer of Murphy, or acted in a different capacity toward him. United Grocers has established in its moving papers that there is no disputed fact in the instant case which would entitle Bonus-Bilt to recovery under the *Douglas* holding that a cause of action may be stated, ". . . based on manufacturer's liability even though the

---

[5]Although Bonus-Bilt denied its cart was defective it is exposed to Murphy's claim that it was defective and hence in its product liability cross-complaint it alleges that United Grocers manufactured, designed and distributed defective products into the stream of commerce directly and proximately causing injury and damage.

defendant is also the plaintiff's employer and the alleged injuries take place in the course of employment, provided that the product involved is manufactured by the employer for sale *to the public* rather than being manufactured for the sole use of the employer." (*Douglas* v. *E. & J. Gallo Winery, supra,* 69 Cal.App.3d 103, 107.)

In *Bell,* the pleadings and summary judgment papers satisfied our high court that there were triable issues as to strict manufacturer's liability but, nonetheless reversal of the grant of summary judgment was not required without also disposing of the contention that *Bell* was the employee of the defendant Industrial Vangas, Inc. at the time of the injury.[6] *Bell* is distinguishable from the instant case in that in *Bell* there was room for proof of *both* manufacture and placement in the stream of commerce leaving only the question of employer's immunity. In our case, instead of there being room for proof of manufacture or design by United Grocers for distribution into the stream of commerce, there seems clearly to be merely the "single or occasional disconnected act" (*Douglas* v. *E. & J. Gallo Winery, supra,* 69 Cal.App.3d 103, 113) of a consumer securing design changes adapting the product to its own use. It seems to us that to establish liability here would expose all employers to liability who specify to their suppliers of products—used exclusively in the employer's business, such as flooring, lighting, equipment, tools, or vehicles—should the manufacturer produce such products defectively. This would involve a shifting or sharing of manufacturer's liability not suggested by any case which has come to our attention.

Furthermore in *Bell,* the sale to the public was undisputed. But the activity in this case when contrasted with the *Douglas* decision's criterion, "primarily for sale to the general public" amounts to no more than unintended, inadvertent and incidental exposure of the cart to anyone other than the employer's employees. There was not only no showing of sale or any other kind of offering of the carts to the consuming public, but the showing is by inescapable inference that United Grocers had an interest in recapturing and reusing such carts as reached their customers so as to reduce the cost of ordering new ones.

In our view, unlike the situation in *Bell,* United Grocers has negated any triable issue as to whether United Grocers manufactured or designed defective carts for the purpose of placing the carts in commerce.

---

[6](*Bell* v. *Industrial Vangas, Inc., supra,* 30 Cal.3d 268, 271.) In the instant case, based on the pleadings and the summary judgment showing made, it is not clear that a product liability cause of action could be made out by a nonemployee. However, the *Bell* facts, virtually conceded, would, if proved, allow recovery by any nonemployee consumer or user.

Likewise negated is any triable issue as to whether United Grocers sold, marketed, distributed or otherwise placed the carts in the stream of commerce. It is therefore unnecessary for us to determine whether both aspects must be negated since, as shown here, neither gives rise to a triable issue and neither is found to be a basis for imposing product liability on the theory that the employer occupied a dual capacity, and therefore assumed duties in addition to those of an employer, with reference to Murphy. Finally, Murphy was on his employer's premises performing his customary duties and his injuries arose "out of" and "in the course of" his employment. He was not then engaged in placing or distributing any product in the stream of commerce. (Cf. *Bell* v. *Industrial Vangas, Inc., supra,* 30 Cal.3d 268.)[7]

█ Accordingly, we hold that on account of the employer's statutory immunity an employer who merely accomplishes design changes in standard products as a purchaser from a manufacturer and designer or other producer not for the purpose of sale in the stream of commerce but exclusively for use in the employer's business with only incidental or coincidental exposure of the product to members of the public is not engaged in such conduct primarily for sale to the general public and does not thereby occupy a status other than that of employer toward an employee injured in his employ on account of a defect in the product.

We believe our conclusion is consistent with the employer immunity doctrine of our worker compensation laws as to injuries arising "out of" and "during the course of" the employment. Likewise we are satisfied that we have not inappropriately limited the product liability doctrine. A case-by-case analysis is still required. No reason appears in this case to support an extension of current decisions.

## V

The rules of summary judgment procedure are well established and, so far as pertinent here, may be concisely stated. A judgment granting a summary judgment motion is appealable. (Code Civ. Proc., § 437c; *Bank of America* v. *Superior Court* (1970) 4 Cal.App.3d 435 [84 Cal.Rptr. 421].) █ "The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such

---

[7]As a matter of interest but of no legal import, Murphy, who succeeded in his worker's compensation claim, did not file suit against his employer.

facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts. [Citations omitted.]'' (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953]; cf. *Central Mutual Ins. Co.* v. *Del Mar Beach Club Owners Assn.* (1981) 123 Cal.App.3d 916, 922-923 [176 Cal.Rptr. 895].)

The statutory provisions governing the summary judgment procedure are contained in the Code of Civil Procedure section 437c.[8]

---

[8]Section 437c of the Code of Civil Procedure applicable herein reads as follows: "[¶](a) Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense thereto. The motion may be made at any time after 60 days have elapsed since the general appearance in the action or proceeding of each party against whom the motion is directed or at such earlier time after such general appearance as the court, with or without notice and upon good cause shown, may direct. Notice of the motion and supporting papers shall be served on the other party to the action at least 10 days before the time fixed for the hearing. The motion shall be heard no later than 45 days before the date of trial, unless the court for good cause orders otherwise. The filing of such motion shall not extend the time within which a party must otherwise file a responsive pleading.

"(b) The motion shall be supported or opposed by affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken. . . .

"Such motion shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the admissible evidence set forth in the papers, and all inferences reasonably deducible from such evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.

"Supporting and opposing affidavits or declarations shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

"If a party is otherwise entitled to a summary judgment pursuant to the provisions of this section, summary judgment shall not be denied on grounds of credibility or for want of cross-examination of witnesses furnishing affidavits or declarations in support of the summary judgment, except that summary judgment may be denied in the discretion of the court, where the only proof of a material fact offered in support of the summary is an affidavit or declaration made by an individual who was the sole witness to such fact; or where a material fact is an individual's state of mind, or lack thereof, and such fact is

Section 437c, requires inter alia that the motion for summary judgment be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c.) Supporting and opposing affidavits and declarations must be based upon the personal knowledge of competent affiants or declarants. (*Ibid.*)

■ On appeal our review is limited to the facts shown in the documents presented to the trial judge in making our independent determination of their construction and effect as a matter of law. (*Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491 [86 Cal.Rptr. 744]; *Dudum* v. *City of San Mateo* (1959) 167 Cal.App.2d 593 [334 P.2d 968].)

■ A defendant moving for summary judgment has the burden of negating every alternative theory of liability presented by the pleadings. (See e.g., *Pearl* v. *Shore* (1971) 17 Cal.App.3d 608, 613 [95 Cal.Rptr. 157]; *Fuller* v. *Goodyear Tire & Rubber Co.* (1970) 7 Cal.App.3d 690, 693 [86 Cal.Rptr.705].)

■ In light of the foregoing we are satisfied after an independent review of the pleadings and documentation submitted with reference to the motion for summary judgment that there is no triable issue as to a material fact and that the trial judge wisely so found.

---

sought to be established solely by the individual's affirmation thereof.

"If it apears that the proof supports the granting of such motion as to some but not all the issues involved in the action, or that one or more of the issues raised by a claim is admitted, or that one or more of the issues raised by a defense is conceded, the court shall, by order, specify that such issues are without substantial controversy. At the trial of the action the issue so specified shall be deemed established and the action shall proceed as to the issues remaining.

"If it apears from the affidavits submitted in opposition to the motion that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as may be just.

"If the court determines at any time that any of the affidavits are presented in bad faith or solely for purposes of delay, the court shall order the party presenting such affidavits to pay the other party the amount of the reasonable expenses which the filing of the affidavits caused such other party to incur.

"Except where a separate judgment may properly be awarded in the action, no final judgment shall be entered on a motion for summary judgment prior to the termination of such action, but the final judgment in such action shall, in addition to any matters determined in such action, award judgment as established by the summary proceeding herein provided for.

"A summary judgment entered under this section is an appealable judgment as in other cases."

Accordingly, we affirm the judgment granting United Grocers' motion for summary judgment.

Racanelli, P. J., and Newsom, J., concurred.