[No. B042570. Second Dist., Div. Three. Mar. 20, 1990.]

GABRIEL Y. LIFE, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent;
CYNTHIA ZUZGA, Defendant and Appellant.

**COUNSEL**

William E. Lloyd, Jr., for Plaintiff and Appellant.

Tuverson & Hillyard and Christopher Brizzolara for Defendant and Appellant.

Thomas & Price, Craig Donahue, Greines, Martin, Stein & Richland, Martin Stein and Timothy T. Coates for Defendant and Respondent.

## OPINION

**KLEIN, P. J.**—Defendant and respondent County of Los Angeles (the County) moves to dismiss the purported appeal of defendant and appellant Cynthia Zuzga (Zuzga), and the appeal of plaintiff and appellant Gabriel Y. Life, also known as Gebru Teklehaimanot (Life).[1]

The issues presented are (1) whether Zuzga, Life's former attorney, has standing to appeal a judgment in favor of the County on Life's claim for medical malpractice; and (2) whether Zuzga's timely but invalid appeal extended the time for the filing of Life's cross-appeal.

Because Zuzga's relation to the subject matter of the appeal arises solely from her employment as Life's attorney, she is not an aggrieved party and lacks standing to appeal. Zuzga's appeal therefore is dismissed.

While Zuzga's appeal is invalid, because her notice of appeal was timely, it operated to extend the time for Life to file notice of cross-appeal. Accordingly, the County's motion to dismiss Life's cross-appeal is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

After Life was injured in an automobile accident, he was under the care of County physicians and personnel at Martin Luther King, Jr., Medical Center (Medical Center), a County facility, from December 1983 until February 10, 1984. On or about February 8, 1984, Life retained Zuzga to represent him in his suit against the driver of the other vehicle involved in the accident.

Subsequently, Life discovered the Medical Center's alleged negligence. Zuzga had no prior experience in filing a claim against a governmental entity. On or about May 10, 1984, Zuzga sent a personal injury claim on Life's behalf addressed to the Medical Center.

In September 1984, Life retained new counsel who, on October 1, 1984, filed a claim with the County Board of Supervisors. The claim sought compensation based on allegations of negligence by Medical Center personnel. The County denied the claim as untimely on or about October 30, 1984. Life's new attorney then filed an application for leave to present a late

---

[1] Pursuant to rule 41(b), California Rules of Court, the County's motions to dismiss the appeal and cross-appeal were placed on calendar for hearing.

All rule references are to California Rules of Court.

claim. The application was denied. On March 14, 1985, Life took his petition for relief from the claims statute off calendar.

On April 25, 1985, Life filed a complaint alleging medical negligence by the County and legal malpractice by Zuzga.[2] Life filed a first amended complaint on August 7, 1985, pleading two causes of action. The pleading did not name the other driver as a defendant. In the first cause of action directed against the County, Life alleged medical malpractice. In the second cause of action, against Zuzga, Life alleged legal malpractice based on Zuzga's failure to file a timely government tort claim.

On January 23, 1989, the County filed a motion for summary judgment on the following grounds: the undisputed evidence demonstrated that Life had not filed a claim with the County board of supervisors within 100 days of the accrual of his cause of action as required by Government Code sections 911.2 and 915; the County was not estopped to assert the claims statute; and, Life could not obtain relief from the claims statute.

Life's new counsel filed papers opposing the County's motion. Zuzga, who also had retained counsel, likewise opposed the County's motion. The County's reply to the opposition papers did not challenge Zuzga's standing to oppose its motion and addressed the merits of her contentions.

The trial court granted summary judgment in favor of the County on Life's complaint, and judgment was entered on April 3, 1989. On April 4, 1989, the County served notice of entry of judgment on Life and Zuzga.

Fifty-nine days later, on June 2, 1989, Zuzga filed notice of appeal from the judgment in favor of the County as against Life. Eleven days later, on June 13, 1989, Life filed notice of cross-appeal.

The County subsequently filed the subject motions to dismiss Zuzga's appeal and Life's cross-appeal.

## CONTENTIONS

The County contends: (1) Zuzga's appeal must be dismissed because she is not aggrieved by the judgment and therefore lacks standing to appeal; and (2) Life's cross-appeal must be dismissed because Zuzga's invalid appeal cannot extend the time in which a cross-appeal could be taken.

---

[2] It is unnecessary to address the apparent prematurity of Life's legal malpractice action against Zuzga.

I. ■ ■■ ■■ ■ *Attorney Zuzga lacks standing to appeal the judgment in favor of the County on Life's complaint.*[3]

### a. *General principles.*

■ Any aggrieved party may appeal from an adverse judgment. (Code Civ. Proc., § 902.)[4] It is generally held, however, that only parties of record may appeal. Nonetheless, one who is legally aggrieved by a judgment may become a party of record and obtain a right to appeal by moving to vacate the judgment pursuant to section 663. (*County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 736 [97 Cal.Rptr. 385, 488 P.2d 953].)

■ Obviously, Zuzga is a party of record to Life's action as she is named as a defendant in Life's second cause of action. However, she is not a party to the judgment, which was entered in favor of the County on Life's first cause of action for medical malpractice. ■ An appeal by a defendant against whom there is no judgment entered and who is not a party aggrieved by the judgment must be dismissed. (*Wallace* v. *Pacific Electric Ry. Co.* (1930) 105 Cal.App. 664, 672-673 [288 P. 834].) ■ Therefore, the essential issue is whether Zuzga is aggrieved by the judgment so as to have standing to take an appeal therefrom.

■ One is considered aggrieved whose rights or interests are injuriously affected by the judgment. An appellant's interest " ' "must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment." ' " (*County of Alameda, supra*, 5 Cal.3d at p. 737; see *Leoke* v. *County of San Bernardino* (1967) 249 Cal.App.2d 767, 771 [57 Cal.Rptr. 770].) A party who would be bound by the doctrine of res judicata, whether or not a party of record, is a party sufficiently aggrieved to assert appellate rights. (*Leoke, supra*, at p. 771.)

*In re Marriage of Tushinsky, supra*, 203 Cal.App.3d 136, addresses the issue of standing by a party's attorney to appeal. In *Tushinsky*, the trial court entered a " 'Further Judgment on Reserved Issues' " awarding the wife's former attorneys the sum of $5,000 as attorney's fees in the dissolution proceeding. (*Id.*, at p. 140.) That amount was offset by $2,500, which figure represented sanctions against the same attorneys regarding a discov-

---

[3] Preliminarily, standing to appeal is jurisdictional and therefore cannot be waived. (*In re Marriage of Tushinsky* (1988) 203 Cal.App.3d 136, 143 [249 Cal.Rptr. 611]; *Kientz* v. *Harris* (1953) 117 Cal.App.2d 787, 792 [257 P.2d 41].) Accordingly, the County's failure to challenge Zuzga's standing at the time Zuzga filed her opposition to summary judgment is without import.

[4] All subsequent statutory references are to the Code of Civil Procedure unless otherwise specified.

ery matter. The trial court further found unenforceable a lien filed by the attorneys regarding their services to the wife in another action. (*Id.*, at p. 141.)

The attorneys filed a purported appeal from the judgment. The appeal was dismissed because the attorneys lacked standing to appeal. *Tushinsky* observed the right to attorney's fees and costs under Civil Code 4370 belongs to the client spouse and accrues to the benefit of the attorney only indirectly. (*Tushinsky, supra*, 203 Cal.App.3d at p. 142.) Accordingly, the wife's attorneys were not aggrieved parties within section 902 with respect to a ruling on a request for attorney's fees encompassed in the final judgment in the dissolution proceeding. (*Ibid.*)

*Tushinsky* relied, inter alia, on *Telander* v. *Telander* (1943) 60 Cal.App.2d 207, 209 [140 P.2d 204], wherein a husband moved to dismiss an appeal taken by his wife's attorney from an order denying her attorney's motion for attorney's fees. The wife had retained the attorney to represent her in an action for separate maintenance. After the husband and wife reconciled, the wife requested her attorney to dismiss her action. The attorney refused to do so, contending he was entitled to additional fees for services allegedly rendered. The wife then engaged the services of another attorney and served upon her first attorney a notice of motion to substitute. The discharged attorney then moved for an order directing the husband to pay him additional compensation. The trial court granted the wife's motion to substitute and denied the attorney's request for additional fees. (*Id.*, at pp. 208-209.) The attorney appealed.

The attorney's appeal was dismissed. *Telander* held "whatever relation appellant had to the subject matter of the litigation arose solely and alone from and out of his employment." (*Telander, supra*, 60 Cal.App.2d at p. 210.) Because the attorney had no interest in the subject matter of the wife's action for separate maintenance, the attorney was not an aggrieved party and was not entitled to appeal orders made in the action. (*Id.*, at p. 209.)[5]

 b. *Zuzga's interest a nominal or remote consequence of the judgment.*

In view of the fact the fees sought by the attorneys in *Tushinsky* and *Telander* did not give them an immediate, pecuniary and substantial interest in the judgment, it necessarily follows that Zuzga's potential pecuniary

---

[5] Compare Probate Code section 911, which makes the attorney a party interested in the estate for the purpose of directly enforcing the attorney's claim for compensation. (*Estate of Merrill* (1946) 29 Cal.2d 520, 523 [175 P.2d 819]; *Hatch* v. *Bush* (1963) 215 Cal.App.2d 692, 704 [30 Cal.Rptr. 397, 13 A.L.R.3d 503].)

liability for legal malpractice would be a nominal or remote consequence of the summary judgment in favor of the County.

 If one's status as attorney were sufficient to confer standing to intervene on appeal, attorneys routinely would inject themselves into their clients' litigation in an attempt to preempt or minimize potential malpractice claims. Such a consequence obviously would wreak havoc with the attorney/client relationship.

> c. *Because the judgment is not res judicata in the legal malpractice action, Zuzga lacks standing to appeal the judgment.*

Zuzga maintains she is aggrieved by the judgment because it will constitute res judicata in Life's legal malpractice action against her. The contention is unpersuasive.

Legal malpractice involves issues different from those raised on the County's motion for summary judgment. Accordingly, the first judgment would not be a complete bar but at most a collateral estoppel as to certain issues. (See 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 189, p. 623.) While the judgment bars Life's medical malpractice action against the County for want of a timely claim, the judgment makes no determination, for example, as to whether Zuzga's conduct fell below the applicable standard of care, or whether Life had a meritorious claim against the County which he lost by reason of Zuzga's alleged negligence. (See *Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433]; *John B. Gunn Law Corp.* v. *Maynard* (1987) 189 Cal.App.3d 1565, 1569 [235 Cal.Rptr. 180].)

Because the summary judgment on the government tort claim issue was not determinative of Zuzga's defenses in the legal malpractice action, *Salinero* v. *Pon* (1981) 124 Cal.App.3d 120 [177 Cal.Rptr. 204], is unavailing. In *Salinero,* a window washer sued the owners of an apartment building for injuries sustained while cleaning the windows. The owners filed a cross-complaint against the architect. The trial court granted summary judgment in favor of the architect on the owners' cross-complaint on the ground the applicable statute of limitations had expired. The trial court also granted nonsuit in favor of the owners on the plaintiff's complaint. (*Id.*, at pp. 126-127.)

The plaintiff appealed, arguing, inter alia, the applicable statute of limitations was unconstitutional because it arbitrarily granted a special privilege to a class of persons—architects and construction contractors. (*Salinero, supra*, 124 Cal.App.3d at p. 127.) The architect contended the plaintiff lacked standing to assert the unconstitutionality of the statute, since he, the

architect, was made a party to the action by the owners' cross-complaint, not by the plaintiff's complaint and thus, the plaintiff was not aggrieved by the summary judgment dismissing the architect. (*Ibid.*)

*Salinero* rejected the architect's argument that the plaintiff lacked standing to assert the unconstitutionality of the statute. It observed that at least before summary judgment was granted, the plaintiff retained the option of substituting the architect for a Doe defendant by amendment of the complaint. Further, the trial court's grant of summary judgment in favor of the architect on the statute of limitations issue adversely affected the plaintiff's right to pursue his action against the architect, given the application of res judicata or collateral estoppel principles to bar any subsequent action by the plaintiff against the architect. (*Salinero, supra,* 124 Cal.App.3d at pp. 127-128.) For those reasons, if prohibited from proceeding further, the plaintiff would suffer the inequity of being bound by the decision without any right of review. (*Id.,* at p. 128.)

Here, because the summary judgment did not dispose of Zuzga's potential defenses to the legal malpractice claim, the summary judgment in favor of the County does not lead to the inequity of Zuzga's being wholly bound by that decision without any right of review. (See *Salinero, supra,* 124 Cal.App.3d at p. 128.) Therefore, we reject Zuzga's argument that she has standing to appeal because of the res judicata effect of the summary judgment.

II. *Notice of cross-appeal timely because filed within 20 days of timely notice of appeal.*

 Rule 3(c), which is controlling here, extends the time for filing notice of cross-appeal, stating: "When a *timely* notice of appeal is filed . . . , any other party may file a notice of appeal within 20 days . . . ." (Italics added.)

Zuzga's notice of appeal was timely as it was filed 59 days after service of notice of entry of judgment. (Rule 2(a).) The County argues, however, that rule 3(c) implicitly requires an appeal to be valid as well as timely, and therefore, Zuzga's timely but invalid appeal could not extend the time for filing notice of cross-appeal; as a result, Life had only 60 days within which to file notice of appeal and his notice of cross-appeal filed on day 70 was untimely.

For the reasons discussed below, we conclude rule 3(c) requires only that an appeal be timely, not that it be valid, in order to extend the time for filing notice of cross-appeal.

a. *Principles of statutory construction.*

■ The usual rules of statutory construction are applicable to the interpretation of the California Rules of Court. (See *Iverson* v. *Superior Court* (1985) 167 Cal.App.3d 544, 548 [213 Cal.Rptr. 399].)

■ "It is a settled principle in California law that 'When statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.' [Citation.]" (*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348 [158 Cal.Rptr. 350, 599 P.2d 656].) Under the guise of construction, the court will not rewrite a law and will not give the words an effect different from the plain and direct import of the terms used. (*Estate of Tkachuk* (1977) 73 Cal.App.3d 14, 18 [139 Cal.Rptr. 55].) The literal meaning of the words of a statute may be disregarded, however, to avoid absurd results or to give effect to manifest purposes that, in light of the statute's legislative history, appear from its provisions considered as a whole. (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 849, fn. 6 [59 Cal.Rptr. 609, 428 P.2d 593].)

■ "[I]t is a well-established rule of construction that when a word or phrase has been given a particular scope or meaning in one part or portion of a law it shall be given the same scope and meaning in other parts or portions of the law. [Citations.]" (*Stillwell* v. *State Bar* (1946) 29 Cal.2d 119, 123 [173 P.2d 313].)

A different situation arises when different language is used in the same connection in different parts of a statute. In such a case, it is to be presumed the Legislature intended a *different* meaning and effect. (*Charles S.* v. *Board of Education* (1971) 20 Cal.App.3d 83, 95 [97 Cal.Rptr. 422]; *In re Connie M.* (1986) 176 Cal.App.3d 1225, 1240 [222 Cal.Rptr. 673].)

The *Charles S.* court relied on this principle in construing two closely positioned Education Code sections concerned with similar subject matter. (*Charles S., supra,* 20 Cal.App.3d at p. 94.) Education Code section 10607, dealing with temporary suspension of students, called for a *meeting* or *conference* with unspecified school officials for discussion of the suspension. Education Code section 10608, concerning expulsion of a student, required a *hearing* thereon before the county board of education, which board thereafter was to render its decision. (*Ibid.*) *Charles S.* observed "[s]uch a radical change in the wording of adjacent code sections 'cannot be deemed meaningless and without design.' (*Ruiz* v. *Industrial Acc. Com.,* 45 Cal.2d 409, 413 [289 P.2d 229].)" (*Id.,* at p. 95.) It concluded: "It must reasonably be assumed that the Legislature in enacting section 10607 also understood the

ordinary meaning of the word 'hearing' and chose to mandate something less than a 'full due process hearing' . . . ." (*Ibid.*)

b. *Application here.*

■■■ Rule 3 deals with extensions of time for filing notice of appeal and notice of cross-appeal.

Rule 3(c) provides when a "timely" notice of appeal is filed, any other party may file a notice of cross-appeal within 20 days after mailing of notification of the first appeal. The word "valid" appears nowhere in rule 3(c).

However, the word "valid" appears in each of the other subdivisions of rule 3: Rule 3(a) provides an extension of time for filing notice of appeal upon the filing of "a *valid* notice of intention to move for a new trial . . . ." (Italics added.)

Rule 3(b) permits an extension of time for filing notice of appeal upon the filing of "a *valid* notice of intention to move to vacate a judgment or to vacate a judgment and enter another and different judgment . . . ." (Italics added.)

Rule 3(d) extends the time for filing notice of appeal "[w]hen the same party has served and filed *valid* notices of intention to move for a new trial and to move for entry of a judgment notwithstanding the verdict, . . ." (Italics added.)

Such a drastic difference in the wording of adjacent subdivisions cannot be deemed meaningless and without design. (See *Charles S., supra,* 20 Cal.App.3d at p. 95.) Accordingly, we cannot read rule 3(c) as implicitly requiring an appeal to be valid as well as timely in order to extend the time for filing notice of cross-appeal.[6]

If rule 3(c) were construed to require the appeal to be both valid and timely, the burden on the cross-appellant would be enlarged considerably and inappropriately, given the language of the rule. By definition, a cross-appeal is any appeal filed after the first appeal (see Cal. Civil Appellate Practice (Cont.Ed.Bar 1985) Cross-Appeals, § 9.1, pp. 261-262), and rule

---

[6] The County's reliance on *Garcia v. Lucido* (1961) 191 Cal.App.2d 303 [12 Cal.Rptr. 601] (disapproved in *Nichols v. Hast* (1965) 62 Cal.2d 598, 601 [43 Cal.Rptr. 641, 400 P.2d 753]), is unavailing. That decision is inapposite as it involved rule 3(a), requiring a "valid" notice of intention to move for a new trial. (*Garcia v. Lucido, supra,* at p. 306.)

3(c) does not differentiate between cross-appeals which are protective and those which are independent.[7]

We therefore conclude rule 3(c) means what is says, namely, that a timely notice of appeal extends the time for filing notice of cross-appeal. Because the timeliness of a cross-appeal does not depend on the validity of the underlying appeal, Zuzga's invalid but timely filed appeal operated to extend the time for Life to file notice of cross-appeal.

Our conclusion in this regard is bolstered by our Supreme Court's recognition of the " 'well established policy that, since the right of appeal is remedial in character, our law favors hearings on the merits when such can be accomplished without doing violence to applicable rules. Accordingly in doubtful cases the right to appeal should be granted.' (. . . ; see also Cal. Rules of Court, rule 53; . . .)" (*Lee v. Brown* (1976) 18 Cal.3d 110, 113 [132 Cal.Rptr. 649, 553 P.2d 1121].)[8]

### c. *Cross-appeal not moot.*

■ Life's opposition to the County's motion to dismiss contains a declaration by his current counsel explaining "in an attempt to save my client the costs of appeal and to protect his interest in the appeal process a Notice of Cross-Appeal was filed in view of the Appeal of . . . Zuzga."

Based thereon, it would appear the invalidity of Zuzga's appeal renders Life's cross-appeal moot.

However, Life's opening brief on appeal, in a change of position, argues the trial court erred in granting summary judgment in favor of the County because his claim was timely filed, he substantially complied with the claims requirements, and the County is estopped to assert the claims requirements.

In view of the substantive arguments raised in Life's opening brief, his counsel's assertion that Life's cross-appeal was protective and contingent

[7] Rules 3 (superior court appeals) and 123 (municipal and justice court appeals) were amended effective January 1, 1971, to provide for an additional time in which any party may file a cross appeal in a civil case. The Judicial Council of California, in its 1971 annual report to the Governor and the Legislature, at page 80, commented: "The amendments will eliminate the need for a party to bring a so-called 'protective appeal' when he wishes to preserve his right to object to the trial court's judgment if that judgment is attacked by another party on appeal. The amended rules in effect provide that when a timely notice of appeal has been filed by a party, any other party may bring a cross appeal within 20 days (10 days in municipal or justice court appeals) after the trial court clerk mails notice of the filing of the first appeal, or within the normal time otherwise prescribed for initiating an appeal, whichever period last expires."

[8] Rule 53 states in relevant part: "The rules [on appeal] shall be liberally construed to secure the just and speedy determination of appeals, transfers, and original proceedings."

upon Zuzga's appeal is ludicrous. However, Life's contentions on appeal establish that the invalidity of Zuzga's appeal does not render Life's cross-appeal moot. Accordingly, we decline to dismiss the cross-appeal as moot.

### DISPOSITION

The County's motion to dismiss Zuzga's purported appeal is granted. Each party to bear respective costs.

The County's motion to dismiss Life's cross-appeal is denied.

Danielson, J., and Arabian, J., concurred.