[No. B042570. Second Dist., Div. Three. Feb. 19, 1991.]

GABRIEL Y. LIFE, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

William E. Lloyd, Jr., for Plaintiff and Appellant.

Thomas & Price, Greines, Martin, Stein & Richland, Martin Stein and Timothy T. Coates for Defendants and Respondents.

Tuverson & Hillyard, Christopher Brizzolara and Koreen L. Olson as Amici Curiae on behalf of Defendants and Respondents.

OPINION

KLEIN, P. J.—Plaintiff and appellant Gabriel Y. Life, also known as Gebru Teklehaimanot (Life) appeals a judgment following a grant of summary judgment in favor of defendants and respondents County of Los Angeles (the County).[1,2]

---

[1] This is our second opinion in this matter. The earlier decision of *Life* v. *County of Los Angeles* (1990) 218 Cal.App.3d 1287 [267 Cal.Rptr. 557], addressed the County's motion to dismiss the purported appeal of attorney Cynthia Zuzga (Zuzga), the first attorney to handle Life's claim against the County. We dismissed Zuzga's purported appeal on the ground she was not aggrieved by the judgment and thus lacked standing to appeal. (*Id.*, at pp. 1292-1295.)

The County's motion also sought to dismiss Life's cross-appeal as untimely. (*Life, supra*, 218 Cal.App.3d at p. 1295.) We denied the County's motion as to the cross-appeal. (*Id.*, at pp. 1295-1298.)

[2] After we dismissed Zuzga's appeal for lack of standing, she filed an application for leave to file an amicus curiae brief in support of Life, her former client. We denied the application.

Because Life's filing of a claim with a County hospital's "legal department" did not amount to substantial compliance and the County is not estopped from asserting the claims statutes (Gov. Code, § 810 et seq.), the judgment is affirmed.[3]

FACTUAL AND PROCEDURAL BACKGROUND

Following Life's injury in an automobile accident, he was treated by County physicians and personnel at Martin Luther King, Jr., Medical Center (Medical Center), a County facility, from December 1983 until February 10, 1984. On or about February 8, 1984, Life retained Zuzga to represent him in his suit against the driver of the other vehicle involved in the collision.

Subsequently, Life discovered the Medical Center's alleged negligence. Zuzga had no prior experience in filing a claim against a governmental entity. Sometime prior to May 1984, Zuzga called the Medical Center's records department regarding Life's medical records and spoke to an unidentified employee. During this telephone conversation, Zuzga asked to be transferred to the "legal department" of the Medical Center, but for some reason the call could not be put through. Zuzga explained to the unknown employee she needed information requiring the presentation of a medical malpractice claim to the County, and he, in turn, informed Zuzga the claim should be addressed to the Medical Center, to the attention of the "legal department." On or about May 10, 1984, Zuzga sent a personal injury claim on Life's behalf to the Medical Center. Zuzga made no follow-up calls to the Medical Center to determine whether the claim had been received and what action, if any, had been taken thereon.

In September 1984, Life retained new counsel who, on October 1, 1984, filed a claim with the proper body, i.e., the County board of supervisors.[4] The claim sought compensation based on allegations of negligence by Medical Center personnel. The County denied the claim as untimely on or about October 30, 1984. Life's new attorney then filed an application for leave to present a late claim. The application was denied. On March 14, 1985, Life took his petition for relief from the claims statute off calendar.

On April 25, 1985, Life filed a complaint alleging medical negligence by the County and legal malpractice by Zuzga. Life thereafter filed a first amended complaint setting forth two causes of action. The pleading did not name the opposing driver as a defendant. In the first cause of action

---

[3] All further statutory references are to the Government Code unless otherwise specified.

[4] The board of supervisors is the governing body of the County. (L. A. County Charter, art. I, §§ 1, 2.)

directed against the County, Life alleged medical malpractice. In the second cause of action against Zuzga, Life alleged legal malpractice based on Zuzga's failure to file a timely government tort claim.

On January 23, 1989, the County filed a motion for summary judgment on the grounds: the undisputed evidence demonstrated that Life had not filed a claim with the County board of supervisors within 100 days of the accrual of his cause of action as required by sections 911.2 and 915;[5] the County was not estopped to assert the claims statute; and, Life could not obtain relief from the claims statute.

Life's new counsel filed papers opposing the County's motion. The matter was heard on March 17, 1989. The trial court ruled the claims statutes barred Life's action and granted summary judgment in favor of the County.

Life appealed.

## CONTENTIONS

Life contends the trial court's ruling was error because triable issues exist as to whether (1) he substantially complied with the claims statute; and (2) the County is estopped to assert the claims statute.

## DISCUSSION

### 1. *Standard of appellate review.*

■ A defendant moving for summary judgment has the burden of establishing a complete defense or negating each of the plaintiff's theories and establishing the action is without merit. (*Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 666 [150 Cal.Rptr. 384, 12 A.L.R.4th 27]; *Bonus-Built, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 442 [186 Cal.Rptr. 357].)

■ The purpose of the summary judgment procedure is not to try the issues but merely to discover, through the medium of affidavits, whether there are issues to be tried and whether the parties possess evidence which demands the analysis of trial. (*Saporta* v. *Barbagelata* (1963) 220 Cal.App.2d 463, 468 [33 Cal.Rptr. 661]; *Orser* v. *George* (1967) 252 Cal.App.2d 660, 669 [60 Cal.Rptr. 708].)

---

[5] At the relevant time, section 911.2 required a plaintiff to file a claim with the public entity within 100 days of the accrual of the cause of action. A 1987 amendment extended the time to six months. (Stats. 1987, ch. 1208, § 3.)

■ Because the trial court's ruling on a motion for summary judgment is one of law based upon the papers presented, the appellate court makes an independent determination of their construction and effect. (*Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491, 496 [86 Cal.Rptr. 744]; *Bonus-Built, Inc.,* *supra*, 136 Cal.App.3d at p. 442; *Hayman* v. *Block* (1986) 176 Cal.App.3d 629, 640 [222 Cal.Rptr. 293].)

*2. Summary judgment properly granted due to Life's noncompliance with claims filing requirements.*

■ Life contends it is uncontroverted that Zuzga mailed a claim within the 100-day period to the address provided by a County employee, which at a minimum, presents factual issues as to substantial compliance, as well as to estoppel.

■ Preliminarily, "the purpose of the claims statute 'is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.]' [Citation.]" (*Phillips* v. *Desert Hospital Dist.* (1989) 49 Cal.3d 699, 705 [263 Cal.Rptr. 119, 780 P.2d 349].) To achieve this end, section 911.2 requires a claimant to present a claim to the public entity within a specified time after accrual of the cause of action. (*Ibid.*) ■ In medical malpractice cases, the action accrues on claimants' actual or constructive discovery of the malpractice. (*Ibid.*)

Section 915 states in relevant part: "(a) A claim, . . . shall be presented to a local public entity by: [¶] (1) Delivering it to the clerk, secretary or auditor thereof; or [¶] (2) Mailing it to such clerk, secretary or auditor or to the governing body at its principal office. [¶] . . . [¶] (c) A claim, . . . shall be deemed to have been presented in compliance with this section even though it is not delivered or mailed as provided in this section if it is *actually received* by the clerk, secretary, auditor or board of the local public entity, . . . within the time prescribed for presentation thereof." (Italics added.)

■ The claims statutes should not be used as traps for the unwary where their purpose has been satisfied, and to that end, courts employ a test of substantial compliance rather than strict compliance in evaluating whether a plaintiff has met the demands of the claims statutes. (*Elias* v. *San Bernardino County Flood Control Dist.* (1977) 68 Cal.App.3d 70, 74 [135 Cal.Rptr. 621].)

*Elias* illustrates an application of the substantial compliance doctrine. In that case, the plaintiff was injured when his truck overturned on a dirt road

owned by the county flood control district. He lodged a claim with the county board of supervisors and addressed it to the county. The board denied the claim. The plaintiff then brought suit against the district, which obtained dismissal of the action on the ground the plaintiff had failed to comply with the claims statute.

The *Elias* court found substantial compliance and reversed. While the district was a legal entity separate and apart from the county, the board's duties included the evaluation of claims against the district. Thus, although addressed to the county, the claim *actually had been presented* to the officials who bore responsibility for evaluating it, and the purposes of the claims statute therefore had been satisfied. (*Elias, supra,* 68 Cal.App.3d at pp. 75-77.)

■■■ Here, Life's presentation of a claim to the Medical Center's legal department would have constituted substantial compliance with section 915 only if the misdirected claim were "*actually received* by the clerk, secretary, auditor or board of the local public entity, . . . , within the time prescribed for presentation thereof." (§ 915, subd. (c), italics added.) Unlike the claim in *Elias*, there is no evidence to show that Life's claim actually reached the appropriate officials or board. Thus, as a matter of law, there was no substantial compliance with the claims statute. Accordingly, summary judgment in favor of the County was proper.[6]

### a. *We decline to follow Jamison v. State of California (1973) 31 Cal.App.3d 513 [107 Cal.Rptr. 496].*

In *Jamison*, cited by Life, after filing a claim with the State Department of Water Resources, the plaintiff filed an action for damages against the state. The state requested dismissal on the ground the claim should have been presented to the State Board of Control, and the complaint disclosed the claim had been filed with the wrong governmental agency. The trial court dismissed the action. (*Jamison, supra,* 31 Cal.App.3d at p. 515.)

The *Jamison* court found substantial compliance and reversed. It held: "The presentation was made in good faith for the purpose of apprising the state of the existence of the claim and to enable it to investigate the validity thereof. Under such circumstances, it was incumbent upon the officer or employee served to forward the claim immediately to the State Board of Control and we hold that the party served had a duty to do so. Certainly, any responsible officer or employee of a major state agency knows, or

---

[6] Life's contention the County did not address the substantial compliance doctrine on its motion for summary judgment is contrary to the record.

should know, that if a substantial claim for damages is presented that it should be forwarded to the Board of Control. In the event the officer or employee actually receiving the claim does not know the proper agency, then a simpl[e] inquiry to the Attorney General's office would result in advice as to the proper agency. Here the State Board of Control may or may not have received the claim. The record is silent with respect to actual receipt thereof. However, regardless of whether the same was received by the board, it should have been. Inasmuch as the claim was in proper form and was timely filed with the agency causing the wrong, plaintiff substantially complied with section 915 . . . ." (*Jamison, supra,* 31 Cal.App.3d at pp. 518-519.)

Thus, by its terms, the *Jamison* duty arises where, as here, a claim was served on a subordinate of the proper entity or board. Nonetheless, we find *Jamison*'s analysis unpersuasive. That decision deems the presentation of a claim to a public employee to amount to substantial compliance, irrespective of whether the claim actually reaches the body responsible for evaluating it. However, *Jamison*'s statement that "regardless of whether the [claim] was received by the board, it should have been[,]" (*Jamison, supra,* 31 Cal.App.3d at p. 518) is at odds with the substantial compliance doctrine as codified in section 915, subdivision (c).

As indicated, substantial compliance under the statute demands that the misdirected claim be "actually received" by the appropriate person or board. (§ 915, subd. (c).) If a public employee has failed to fulfill a duty to forward a misdirected claim to the appropriate party, such claim cannot be in substantial compliance because it was not "actually received" by the appropriate party.

Further, *Jamison*'s reliance on a public entity's internal transmittal of a claim conflicts with section 915, which requires the *claimant* to file with the appropriate official or board. By focusing on the duty of a public employee in receipt of a claim to forward the claim to the proper agency, *Jamison* inappropriately shifts responsibility for filing a claim with the proper official or body from the claimant to the public entity.[7]

For these reasons, we reject Life's contention that his presentation of a claim to the "legal department" of the Medical Center creates a triable issue as to substantial compliance.

---

[7] Other courts merely have explained *Jamison* (see, e.g., *Elias* v. *San Bernardino County Flood Control Dist., supra,* 68 Cal.App.3d at p. 76) or distinguished *Jamison,* as for example, where the claim was filed with the *wrong* public entity rather than with a *subordinate* of the responsible entity. (See *Kaslavage* v. *West Kern County Water Dist.* (1978) 84 Cal.App.3d 529, 538-539 [148 Cal.Rptr. 729]; *Johnson* v. *San Diego Unified School Dist.* (1990) 217 Cal.App.3d 692, 698-700 [266 Cal.Rptr. 187].)

b.  *No triable issue as to estoppel.*

■  Alternatively, Life contends the County is estopped to assert the claims statutes because a Medical Center employee advised Zuzga to file a claim directly with the hospital's "legal department." The argument need not detain us.

Estoppel requires, inter alia, a representation or concealment of material facts to a party ignorant, "actually and permissibly," of the truth. (11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 177, p. 859.) In view of section 915 and applicable case law, it cannot be maintained that attorney Zuzga reasonably could rely on the advice of a medical records clerk to file a claim with the hospital's legal department, so as to estop the County.

## DISPOSITION

The judgment is affirmed. Life to bear costs on appeal.

Danielson, J., and Croskey, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 23, 1991. Arabian, J., did not participate therein. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.