Filed 11/29/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JENNALYN SANTOS et al., | B278391 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC589742) |
| v. | |
| LOS ANGELES UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle S. Williams Court, Judge. Reversed.

Weinreb Law, Michael D. Weinreb; Benedon & Serlin, Gerald M. Serlin and Wendy S. Albers for Plaintiffs and Appellants.

Los Angeles Unified School District Office of the General Counsel, James A. Hunt, and Eric R. Schaefer for Defendant and Respondent.

———————————————————

# INTRODUCTION

Appellants Jennalyn Santos and Douglas Morales were driving northbound on Normandie Avenue in the City of Los Angeles when a Los Angeles School Police Department (LASPD) vehicle allegedly ran a red light and struck them. They were transported to the hospital by ambulance, after being given a card bearing the LASPD name, seal, address and website, and the name of an LASPD officer.

After filing a government claim for damages with LASPD within the time specified by Government Code section 911.2, appellants filed the instant lawsuit. Over a year later, appellants were provided a traffic collision report identifying the driver as an employee of LASPD and the vehicle as insured by respondent Los Angeles Unified School District (LAUSD). Appellants thereafter amended their complaint to add LAUSD as a defendant.

Subsequently, LAUSD moved for summary judgment, arguing that appellants failed to comply with the requirements of the Government Claims Act, Government Code section 810 et seq., (the Act) because no government claim was ever filed with LAUSD. LAUSD argued that the filing of a government claim with LASPD did not satisfy the Act because LASPD is not a separate entity, but part of LAUSD. Appellants opposed the motion, arguing that LAUSD should be equitably estopped from asserting noncompliance with the Act as a defense, because LAUSD and/or its employees affirmatively misled them to believe that LASPD was separate public entity and misdirected them to file a claim with LASPD instead of LAUSD. The trial court determined equitable estoppel did not apply on the ground that no LAUSD employee expressly told appellants that filing a

2

government claim with LASPD was tantamount to filing a claim with LAUSD. For the reasons set forth below, we conclude that appellants have demonstrated triable issues of fact with respect to the existence of equitable estoppel. Accordingly, we reverse.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

On March 17, 2014, Morales was driving northbound on Normandie Avenue with his wife Santos as a passenger when an LASPD vehicle allegedly ran a red light and struck the passenger side of their car. As a result of the collision, Santos suffered a severe abdominal wall contusion, two cervical disc protrusions, a torn rotator cuff in her left shoulder and a torn medial meniscus in her right knee. Morales suffered a torn rotator cuff in his left shoulder. Before appellants were transported by ambulance to the hospital, they received a business card indicating that the responsible party was LASPD. The card bore a seal with the name "Los Angeles School Police Department," and listed the name, address and phone number of the Los Angeles School Police Department (125 N. Beaudry Avenue, Los Angeles, CA 90012; (213) 625-6531). It also listed a website of www.laspd.com. Written on the card was the name "Sgt. J. Ivankay #879."

Four days later, on March 21, 2014, appellants' attorney Michael Weinreb filed with the City of Los Angeles a government claim for damages arising out of the traffic collision. On April 29, 2014, the City denied the claim, stating that LASPD was "'a separate public entity and not part of the City of Los Angeles.'" Thereafter, as discussed in greater detail below, Weinreb filed a claim with LASPD on a form downloaded from the LASPD website, attaching a copy of the original claim submitted to the City.

3

A.    *Appellants' Complaints*

On July 29, 2015, appellants filed a form complaint for damages alleging causes of action for "motor vehicle" and "general negligence" against the LASPD and its employee, Sergeant J. Ivankay.  The complaint alleged that on March 17, 2014, Sergeant Ivankay ran a red light and struck appellants at the intersection of Normandie and Manchester Avenues in Los Angeles.  On the form complaint, appellants checked the box indicating they had complied with the applicable claims statute.

The next day, appellants received a copy of the traffic collision report prepared by the Los Angeles Police Department (LAPD).  The report indicated that the driver of the LASPD vehicle involved was Eric Alvarez, an on-duty LASPD officer whose address was "125 N. Beaudry Ave., Los Angeles, CA 90012."  The report also stated that LASPD Sergeant Ivankay -- whose name was written on the card given to appellants after the accident -- was the officer at the scene who took custody of the damaged LASPD vehicle.  The owner and insurer of the vehicle was listed as LAUSD with an address of "2011 N. Soto St., L.A. CA 90032."

On September 4, 2015, appellants filed a first amended complaint (FAC) naming LASPD, Eric Alvarez and LAUSD as defendants.  The FAC alleged that Alvarez, an employee of LASPD and LAUSD, ran a red light and caused a motor vehicle collision with appellants.  The FAC again stated that appellants had complied with the applicable claims statute.

B.    *LAUSD's Motion for Summary Judgment*

On March 25, 2016, LAUSD moved for summary judgment on the ground that the causes of action in the FAC were not

4

viable because appellants failed to file a government claim with LAUSD. LAUSD further argued that appellants' filing of a claim with LASPD did not excuse their failure to file a claim with LAUSD because LASPD is a department within LAUSD, not a separate legal entity. LAUSD noted that the traffic collision report identified LAUSD as the owner and insurer of the vehicle.

C. *Appellants' Opposition to Summary Judgment Motion*

Appellants opposed the motion for summary judgment, arguing that the facts established -- or raised a triable issue of fact as to -- estoppel, as LAUSD or its employees misled them about where to file their government claim for damages. In supporting declarations, appellants explained that at the time of the traffic incident, they were unable to obtain information about the driver who hit them due to the severity of their injuries. The only identifying information they received at the scene was the LASPD business card. The card bore no reference to LAUSD. Appellants also declared that they were not given a traffic collision information card (used to request a traffic collision report).

Appellant's counsel, Weinreb, and his assistant, Joy Buxton, also submitted declarations. Weinreb stated that four days after the traffic incident, he sent a letter to the Los Angeles Police Department (LAPD) requesting a copy of the traffic collision report. In the letter, he indicated that the incident occurred on March 17, 2014, at the intersection of "Normandy and Manchester." (In fact, it occurred one major intersection away, at Normandie and Florence Avenues.) On April 16, 2014, LAPD responded that it was unable to locate a copy of the report and asked that Weinreb resubmit his request with a copy of the

5

traffic collision information card. Buxton called the LAPD document processing unit and informed the officer answering the phone that appellants did not receive a traffic collision information card. The officer told her to resubmit the form with "as much information as we had." Although Buxton resubmitted the request with additional information, including appellants' vehicle license plate number and the LASPD business card, LAPD could not locate the report. Weinreb sent a third request on July 28, 2015, and finally received the report on July 30, the day after he filed the original complaint.

In order to determine where to file a government claim for damages, Buxton checked the website listed on the LASPD business card provided appellants at the scene. The website page had a banner at the top with the words LOS ANGELES SCHOOL POLICE DEPARTMENT prominently displayed. The banner also contained a seal bearing the words Los Angeles School Police Department. The webpage entitled "What is the LASPD about . . ." stated: "The Los Angeles School Police Department (LASPD) is the largest independent school police department in the United States [with numerous personnel] dedicated to serving the Los Angeles Unified School District." Another webpage answered the question "Is the School Police Department an independent law enforcement organization?" by stating: "The Los Angeles Unified School District maintains its own fully accreditated [*sic*] police department under Section 830.32(b) of the California Penal Code and under the authority of Section 38000 of the California Education Code. Although the School Police Department is *a separate entity*, we work very closely with all other law enforcement agencies within the LAUSD borders." (Italics added.) The "Contact" webpage stated that the

6

headquarters for LASPD was "125 N. Beaudry Avenue, Los Angeles, CA 90012."

Buxton called LASPD at the contact number listed on the website and spoke with Lieutenant Frank Minutella. As Buxton explained, "I told Lieutenant Minutella that I needed to submit a governmental claim form for damages to the LASPD. Lieutenant Minutella told me that the claim form for the LASPD was available online at the LASPD website and to mail the completed form to the LASPD at 125 N. Beaudry Avenue, Los Angeles, CA 90012. Lieutenant Minutella did not tell me to submit a claim form to the LAUSD or that the LASPD is part of the LAUSD."[1]

On July 29, 2014, Weinreb submitted a claim to LASPD on the form Buxton had printed from the LASPD website. The form was entitled, "Los Angeles School Police Department Service Complaint Form." It asked for the name of the Los Angeles School Police Department employee involved and the name of any witnesses, and provided two pages of blank space for a description of the incident. At the bottom of the first page of the form, it directed the party submitting it to send it to the Los Angeles School Police Department at 125 North Beaudry Avenue, Los Angeles 90012. In a small box below was written "For LASPD Internal Affairs Use Only." Nowhere did the form mention LAUSD. Nor did it indicate that the form was limited to nondamage claims.

Weinreb filled out the LASPD form and attached to it the claim form he previously had filed with the City of Los Angeles,

---

[1] LAUSD does not dispute that Lieutenant Minutella is an LAUSD employee or that his statements are attributable to LAUSD.

7

containing additional information about appellants' claim. LASPD never responded. Only on October 9, 2015 -- after appellants filed suit and well after the time to submit a timely claim or to seek leave to file a late claim had passed -- did Weinreb receive a letter from LAUSD's counsel stating that LASPD was not a separate legal entity, but part of LAUSD.[2]

D.    *LAUSD's Reply*

LAUSD argued that appellants were barred from raising the issue of equitable estoppel because in their original and amended complaints, they had alleged compliance with the Government Claims Act, instead of alleging that they were excused from compliance. Alternatively, LAUSD argued that appellants could not show a triable issue of fact as to equitable estoppel because (1) appellants' evidence constituted inadmissible hearsay, and (2) Weinreb could not reasonably have relied on Lieutenant Minutella's statements to forego filing a government claim with LAUSD. LAUSD argued the LASPD website was not misleading because it referenced Education Code section 38000, which authorizes a school district to establish a "school police department" and to "employ peace officers." (Ed. Code, § 38000, subd. (b).) LAUSD also noted that the traffic collision report clearly identified LAUSD as the owner of the LASPD vehicle, and

---

[2]    Buxton stated that she viewed the LASPD website in April 2016 and noticed that it had changed significantly from when she viewed it in April 2014: "The LASPD website now lists LAUSD at the top of the page and the bottom of the page has LAUSD's address, 333 S. Beaudry Avenue, Los Angeles CA 90017. Also when I searched 'claim form' on the LASPD website, it redirected me to the LAUSD website and an entirely different claim form."

8

argued that it was not credible that Weinreb had been unable to timely obtain the report through the exercise of reasonable diligence.

In a supporting declaration, Lieutenant Minutella stated the document Weinreb submitted, entitled "'Service Complaint Form,'" was not an LASPD claim for damages form. According to Minutella, the form was for "civilians to complete if they wish[ed] to raise complaints of LASPD officer misconduct for handling by LASPD Internal Affairs." He asserted: "LASPD does not have, nor has it ever had, a governmental claim for damages form specific to LASPD."

Lieutenant Minutella did not dispute the veracity of Buxton's account of her conversation with him. On June 8, 2016, Buxton submitted a supplemental declaration providing additional details about that conversation. She declared under penalty of perjury: "When I spoke to Lt. Minutella I stated that I needed to submit the statutory governmental claim for property damage and personal injuries arising from an automobile accident involving the LASPD. Lt. Minutella told me that the claim form for property damage and personal injuries arising from an automobile accident involving the LASPD was available online on the LASPD website. At no time during our conversation did Lt. Minutella inform me that LASPD is a part of the LAUSD and is not a separate entity. Lt. Minutella directed me to the LASPD website and instructed me to submit plaintiffs' claim on the 'Service Complaint Form' which was available on the LASPD website."[3]

---

[3] On appeal, LAUSD objects to any consideration of Buxton's supplemental declaration, arguing that it was untimely filed the

9

E.    *Trial Court's Tentative and Final Rulings*

On June 9, 2016, the trial court issued a tentative ruling granting the motion for summary judgment.  In the tentative, the court rejected LAUSD's argument that appellants were barred from raising the issue of equitable estoppel.  The court ruled it would "consider the arguments for and against application of the equitable estoppel doctrine on their merits" because "if Plaintiffs wish to assert equitable estoppel, at a minimum they should be permitted to amend their complaint to assert application of the doctrine."  At the hearing on LAUSD's motion, Weinreb addressed LAUSD's challenge to the court's consideration of estoppel based on the pleadings:  "If that is their argument, it's tantamount to a demurrer, and then we would request leave to amend on that issue.  But I believe you've already . . . ruled on that in your tentative."  LAUSD's counsel did not dispute Weinreb's characterization of the proceedings.

Following the hearing, the court issued its written ruling granting LAUSD's motion for summary judgment.  The court stated it would consider appellants' estoppel arguments because "at a minimum" it would have permitted appellants to amend their complaint to assert the doctrine.  The court expressly found LAUSD would not be prejudiced by such an amendment, noting that "it is clear that all parties have known, since prior to litigation, that Plaintiffs were taking the position that the claim

day before the summary judgment hearing and served via facsimile.  However, LAUSD does not suggest -- nor does the appellate record show -- that it objected to the supplemental declaration before the trial court.  Moreover, as detailed below, the trial court ruled that it would consider "all evidence," and on appeal, LAUSD does not assign error to that ruling.

form served on LASPD was sufficient to satisfy all claims filing requirements." The court overruled LAUSD's evidentiary objections, stating it would "consider all evidence before it in determining whether Plaintiffs' equitable estoppel argument has merit."

The court concluded that LAUSD was entitled to summary judgment. It determined that Weinreb could not reasonably have relied on "the advice of either the LASPD officer [who provided the business card at the scene] or the LASPD lieutenant [who directed Buxton to the form on the website] so as to estop Defendant [LAUSD], to the extent advice was given at all." The court found there was no evidence that "the LASPD officer responding to the scene gave . . . any advice or made any representation or concealment of fact concerning whether and/or where a government claim should be submitted. Moreover, [Buxton's] inquiry to the LASPD lieutenant requested information about filing a[n] LASPD claim, not whether the government claim should be filed there or anywhere else. There is no evidence the LASPD lieutenant made any representation or concealment of fact concerning whether and/or where a government claim should be submitted. There is no evidence that anyone from LASPD told Plaintiff[s] or [their] representative that LASPD was the proper entity with which to file the government claim."

Judgment dismissing the FAC was entered September 8, 2016. Appellants timely appealed.

**DISCUSSION**

Appellants contend the trial court erred in granting LAUSD's motion for summary judgment. "A defendant is

11

entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.]" (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107.) Generally, "the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) In moving for summary judgment, "all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action -- for example, that the plaintiff cannot prove element *X*." (*Id.* at p. 853.)

"'Review of a summary judgment motion by an appellate court involves application of the same three-step process required of the trial court. [Citation.]'" (*Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1662 (*Bostrom*).) The three steps are (1) identifying the issues framed by the complaint, (2) determining whether the moving party has made an adequate showing that negates the opponent's claim, and (3) determining whether the opposing party has raised a triable issue of fact. (*Ibid.*) Following a grant of summary judgment, we review the record de novo for the existence of triable issues, and consider the evidence submitted in connection with the motion, with the exception of evidence to which objections were made and sustained. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

12

Here, appellants' FAC asserted causes of action for motor vehicle and general negligence against LAUSD, a public entity. LAUSD made an adequate showing that those causes of action were not viable because appellants had not complied with the Act's requirement to serve a government claim on LAUSD. (See *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738 ["'[F]ailure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity.' [Citation.]"].) Moreover, the filing of a government claim with LASPD did not constitute substantial compliance with the Act because LASPD is not a separate legal entity, but a part of LAUSD. (See *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 992 [holding plaintiff failed to comply with Government Claims Act where government claim was never presented or delivered to the statutorily designated recipient].)

Because LAUSD made an adequate showing that appellants could not demonstrate compliance with the Act, the burden shifted to appellants to show a triable issue of fact with respect to any basis for excusing compliance with the Act. Appellants presented evidence that LAUSD should be estopped from asserting noncompliance with the Act as a defense because LAUSD and its employees misled them by concealing the fact that LASPD was not a separate legal entity, but part of LAUSD. For the reasons set forth below, we conclude that appellants have presented evidence sufficient to establish a triable issue of fact with respect to equitable estoppel.

A.    *Appellants are not Barred from Raising Equitable Estoppel.*

LAUSD contends that appellants are barred from arguing for application of the doctrine of equitable estoppel because it was not pleaded in their FAC.  (See *Chalmers v. County of Los Angeles* (1985) 175 Cal.App.3d 461, 467 ["To establish estoppel as an element of a suit the elements of estoppel must be especially pleaded in the complaint with sufficient accuracy to disclose facts relied upon"]; accord *Sofranek v. County of Merced* (2007) 146 Cal.App.4th 1238, 1251 (*Sofranek*).)  However, the trial court determined that appellants could raise equitable estoppel because they could, without prejudice to LAUSD, amend their complaint to allege evidence of estoppel.  LAUSD neither discusses the trial court's ruling nor whether the ruling was erroneous under the applicable standard of review.  Thus, this contention is arguably forfeited.

Even if not forfeited, we would reject it on the merits. *Chalmers*, which LAUSD itself cites, suggests appellants may argue for application of the equitable estoppel doctrine even if not pleaded in the complaint.  There, the appellate court, determining that the complaint did not plead facts sufficient to establish estoppel, noted that a complaint may be amended to assert those facts and went on to consider the evidence of estoppel.  (*Chalmers*, *supra*, 175 Cal.App.3d at p. 467.)  Here, the trial court determined that LAUSD would not be prejudiced by an amendment to the FAC to allege facts supporting equitable estoppel, and LAUSD does not challenge that finding on appeal. The trial court went on to consider appellants' evidence and to rule, as a matter of law, that appellants could not establish equitable estoppel.  Under the reasoning in *Chalmers*, the trial

14

court was entitled to do so. Because the court declined to grant summary judgment based on the pleading deficiency in the FAC and instead ruled on the merits of appellants' equitable estoppel argument, we will consider its merits ruling. (See *Bostrom, supra*, 35 Cal.App.4th at p. 1664 [where trial court did not rest its grant of summary judgment on pleading deficiency but reached the merits, reviewing court may exercise its discretion to resolve issue on the merits].) In short, appellants are not barred from raising the issue of equitable estoppel on appeal.

      B.    *Appellants Presented Evidence Establishing Triable Issues with Respect to Equitable Estoppel.*

Appellants argue that LAUSD was equitably estopped from asserting noncompliance with the Act as a defense. "It is well-settled that a public entity may be estopped from asserting the limitations of the claims statute where its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act." (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 445 (*John R.*).) "Estoppel most commonly results from misleading statements about the need for or advisability of a claim." (*Ibid.*) However, "[e]quitable estoppel does not require factually misleading statements." (*J.P. v. Carlsbad Unified School Dist.* (2014) 232 Cal.App.4th 323, 335 [noting estoppel may be found where public entity "'engaged in some calculated conduct *or* made some representation *or* concealed facts which induced the plaintiff not to file a claim or bring an action within the statutory time'"], quoting *Ortega v. Pajaro Valley Unified School Dist.* (1998) 64 Cal.App.4th 1023, 1047.) "[A]ctual fraud or the intent to mislead is not essential." (*John R., supra*, 48 Cal.3d at p. 445.)

15

"Estoppel as a bar to a public entity's assertion of the defense of noncompliance arises when the plaintiff establishes by a preponderance of the evidence:  (1) the public entity was apprised of the facts, (2) it intended its conduct to be acted upon, (3) plaintiff was ignorant of the true state of facts, and (4) [the plaintiff] relied upon the conduct to his detriment." (*Christopher P. v. Mojave Unified School Dist*. (1993) 19 Cal.App.4th 165, 170.) "Reliance by the party asserting the estoppel on the conduct of the party to be estopped must have been reasonable under the circumstances." (*Mills v. Forestex Co*. (2003) 108 Cal.App.4th 625, 655.)  Whether equitable estoppel applies is normally a question of fact for the court to determine.  (*Sofranek, supra*, 146 Cal.App.4th at p. 1251; see *Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 161 ["As the name suggests, equitable estoppel is an equitable issue for court resolution."].)  However, when the undisputed evidence is susceptible of only one reasonable inference, the existence of an estoppel is a question of law. (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305.)

A plaintiff may be entitled to assert equitable estoppel if a public entity or its employee provided misleading information about which entity was responsible on a government claim. *Fredrichsen v. City of Lakewood* (1971) 6 Cal.3d 353 is instructive.  There, the plaintiff was injured while walking on a defectively maintained sidewalk in the City of Lakewood.  (*Id*. at p. 355.)  The plaintiff called the city and requested that it supply her with "the necessary claim form so that she could properly assert her claim for damages against it." (*Ibid*.)  Instead of a claim form, the city sent a letter advising the plaintiff that the responsibility for maintaining the sidewalk rested with a third party.  The plaintiff thereafter filed a lawsuit against the third

16

party.  During discovery, it was determined that the defective sidewalk was in fact maintained by the city.  (*Id*. at pp. 355-356.) After the city was added as a defendant, it demurred to the complaint on the ground that no claim had been filed against it. (*Ibid*.)  Our Supreme Court concluded that as a matter of law, the city was estopped from asserting noncompliance with the Government Claims Act:  "In the instant case, plaintiff immediately inquired as to the proper procedure and form for filing her claim, which indicates her willingness to supply whatever information was necessary for the proper settlement of her claim.  She was deterred from supplying the necessary information by the city's action.  The city cannot frustrate plaintiff's attempt to comply with a statute enacted for its benefit and then assert noncompliance as a defense."  (*Id*. at p. 360; see also *Elmore v. Oak Valley Hospital Dist*. (1988) 204 Cal.App.3d 716, 723-724 [estoppel found where plaintiffs' attorney reasonably relied on misleading information provided by public agency about its name].)

Here, appellants presented evidence that, at a minimum, raises a triable issue of fact whether LAUSD concealed the fact that it was the responsible public entity.  Following an accident in which appellants were both seriously injured by a police vehicle, they were given a business card by an LASPD employee (Sgt. Ivankay) informing them that the responsible driver was an LASPD employee.  That business card contained no mention of LAUSD.  The website on the card (www.laspd.com) directed Buxton to a page prominently bearing the title Los Angeles School Police Department in the banner and displaying a seal bearing the same name.  Nowhere did the website clearly state that LASPD was a part of LAUSD.  Rather, the website stated

17

that LASPD is a "separate entity" and the "largest independent school police department in the United States." The address provided on the website (125 N. Beaudry Avenue, Los Angeles CA 90012) was the same as the address on the business card.

Buxton then called a contact number listed on the website and spoke with Lieutenant Minutella. She informed him that she wanted to file a government claim for damages arising out of an automobile accident involving LASPD. Lieutenant Minutella advised her that she should download the claim form from the LASPD website and mail the completed form to LASPD at 125 N. Beaudry Avenue, Los Angeles, CA 90012. The LASPD form (entitled "Service Complaint Form") has spaces for listing the complaining party, the involved LASPD employee(s) and any other witnesses, and a large box extending over two pages to describe the incident. The form states that it should be submitted to LASPD at "125 North Beaudry Avenue, Los Angeles, CA 90012." It makes no mention of LAUSD. Nor does the form state that a government claim for damages arising out of the conduct of an LASPD employee should be submitted on any other form or to another address, such as LAUSD's. Nor does the form suggest it is limited to nondamage claims. Taken as a whole, this evidence is sufficient to support a finding not only that LAUSD concealed the fact that LASPD was a part of LAUSD, but that its employee affirmatively misrepresented to Buxton that the claim form downloaded from the LASPD website was the form necessary to file a government claim for damages arising out of the conduct of an LASPD employee.

LAUSD contends it was not reasonable for appellants or their attorney Weinreb to rely on Lieutenant Minutella's advice because the Service Complaint Form itself should have put

18

Weinreb on notice that it was not a government claim form. We disagree. The form permits a claimant to present a detailed government claim. A claimant can identify the parties involved, describe the incident and present evidence of damages.[4] Neither the title "Service Complaint Form" nor the reference to Internal Affairs at the bottom of the form establish, as a matter of law, that Weinreb should have known it was not a government claim form. Finally, to the extent the Service Complaint Form was not a government claim form, Lt. Minutella made an affirmative misrepresentation of fact. Buxton specifically requested advice on how to file a government claim for damages arising out of an incident involving an LASPD employee, and Lieutenant Minutella directed her to the Service Complaint Form. His subsequent declaration that LASPD never had a government claim form for damages did not render his advice any less misleading.

LAUSD argues Weinreb's belief that LASPD was an entity separate and apart from LAUSD was not reasonable. It notes that the LASPD website in 2014 stated that LAUSD maintains "its own fully accrediated [*sic*] police department . . . under the

---

[4] Government Code section 910 enumerates the information that must be included in a government claim. It provides that the claim "shall show all of the following: [¶] (a) The name and post office address of the claimant. [¶] (b) The post office address to which . . . notices [are] to be sent. [¶] (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted. [¶] (d) A general description of the . . . injury, damage or loss incurred . . . . [¶] (e) The name or names of the public employee or employees causing the injury, damage, or loss, if known. [¶] (f) The amount claimed. . . ." (Gov. Code, § 910.)

19

authority of Section 38000 of the California Education[] Code." However, that language was immediately followed by a statement that LASPD is a "separate entity." We conclude that the reference to the Education Code could not, as a matter of law, place Weinreb on notice that LASPD was not a separate public entity.

Other evidence supported the reasonableness of Weinreb's belief that LASPD was a separate public entity. First, the LASPD business card never mentioned LAUSD, much less identified LASPD as part of it. Under Government Code section 7530, a public agency "shall" identify itself "on all identification cards used to identify a representative of a public agency." Weinreb reasonably could rely on that statute to believe that were LASPD a part of LAUSD, it would have been identified as such on the card.[5] The reasonableness of Weinreb's belief that LASPD was a separate public entity is further supported by the denial of the government claim filed with the City of Los Angeles. The City denied the claim on the basis that LASPD was a

---

[5] LAUSD contends that the remedy for a violation of Government Code section 7530 is that a claimant may file a late claim. (See Gov. Code, § 7530 ["a written application for leave to present a claim pursuant to Section 911.4 shall be granted when it can be shown that the claimant acted with reasonable diligence in pursuing the claim and reasonably believed that the responsible entity was not a public agency by reason of its representations"].) However, the issue is not whether appellants are entitled to file a late claim, but whether Weinreb's belief that LASPD was not part of LAUSD was reasonable.

"separate public entity."[6]  In short, appellants presented more than sufficient evidence to establish a triable issue of fact as to the reasonableness of Weinreb's belief that LASPD was a separate public entity.

LAUSD's reliance on *Life v. County of Los Angeles* (1991) 227 Cal.App.3d 894 (*Life*), is misplaced.  There, the plaintiff sued a county medical center for medical negligence.  Prior to filing the lawsuit, the plaintiff's attorney called the center's records department to obtain the plaintiff's medical records and spoke to an unidentified employee.  The attorney explained to the employee that she needed information about presenting "a medical malpractice claim to the County," and the employee informed the attorney that the claim should be addressed to "the Medical Center, to the attention of the 'legal department.'"  The attorney promptly did so.  (*Id*. at p. 897)  The trial court granted the County of Los Angeles's motion for summary judgment, and the appellate court affirmed.  It determined that filing a claim with the center's legal department did not satisfy the requirements set forth in Government Code section 915, which requires the claim to be presented or received by the appropriate official or board of the County.  (*Id*. at pp. 899-900.)  The court concluded that estoppel did not apply because it was not reasonable for the attorney to rely on an unnamed clerk's advice to file a government claim for damages against the County with the medical center's legal department, when section 915 clearly provides that such a claim must be filed with the appropriate

---

[6]     Appellants do not seek to attribute the representations of the City to LAUSD, but argue that they are relevant to demonstrate the reasonableness of Weinreb's belief.

official or board of the County. (*Id*. at p. 902.) *Life* is distinguishable because there, the attorney was well aware that the County of Los Angeles -- not the medical center -- was the responsible party when she sought information about presenting "a medical malpractice claim to the *County*." (*Life*, at p. 897, italics added.) Here, in contrast, LASPD's own conduct -- through the information provided on its business card and its website, and the representation of its employee -- led Weinreb to believe the responsible party was LASPD, not LAUSD.

Finally, LAUSD argues that the traffic collision report should have put Weinreb on notice that LAUSD was the responsible party, as the report identified LAUSD as the owner and insurer of the vehicle involved. However, the evidence shows that Weinreb promptly and repeatedly attempted to obtain the traffic collision report, but was unsuccessful until after the time to file a late government claim had passed. Weinreb submitted a request for the traffic collision report four days after the incident, providing the date of the collision and the approximate location. When LAPD could not locate the report, Buxton submitted a second request with additional information, including appellants' vehicle license plate number and the LASPD business card. LAPD still could not locate the traffic collision report. Weinreb submitted a third request before filing his complaint against LASPD. This evidence establishes, at a minimum, a triable issue of fact as to Weinreb's diligence in obtaining the report.

*Shaddox v. Melcher* (1969) 270 Cal.App.2d 598, relied upon by LAUSD, is inapposite. There, a motorist was injured in an accident with a State employee. The highway patrol interviewed the State employee, who provided the name of his employer (State of California, Division of Highways) and the fact that the

22

vehicle he was driving was registered with the State. (*Id*. at p. 600.) The motorist's attorney did not contact the highway patrol, and failed to present a timely claim to the State. The appellate court concluded the motorist failed to show she should be excused from filing a timely claim because, inter alia, "[n]o reason was given for failure to make a timely, and obviously reasonable, inquiry of the highway patrol for information concerning the employment of the driver . . . and the ownership of the car he was driving." (*Id*. at p. 602.) Nothing like that occurred here. Weinreb promptly requested information from LAPD concerning the traffic accident. Moreover, even the traffic collision report identified Alvarez's employer as LASPD, not LAUSD.

In sum, appellants produced evidence establishing, at a minimum, a triable issue of fact whether LAUSD and its employees concealed and/or misled appellants concerning LASPD's relationship to LAUSD and thus "deterred [appellants] from supplying the necessary information" to the proper entity. (*Fredrichsen, supra*, 6 Cal.3d at p. 360.) Specifically, the evidence would support a finding that the business card provided appellants and the website to which they were directed concealed the fact that LASPD was a part of LAUSD. The evidence would further support a finding that the representation of an LASPD/LAUSD employee that a claim for damages arising out of the conduct of an LASPD employee should be submitted on the LASPD Service Complaint Form affirmatively misled appellants to believe that filing the form as directed was the proper means of asserting a claim against the government entity responsible for their injuries. Finally, the evidence would support a finding that appellants' and their counsel's reliance on those representations

23

was reasonable.  Accordingly, appellants presented evidence sufficient to permit a finding that respondent is estopped from asserting noncompliance with the Government Claims Act as a defense.

## DISPOSITION

The judgment of dismissal is reversed.  Appellants are awarded their costs on appeal.

**CERTIFIED FOR PUBLICATION.**


MANELLA, J.


We concur:



EPSTEIN, P. J.



WILLHITE, J.