

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| HARBOR PERFORMANCE ENHANCEMENT CENTER, LLC, a Delaware limited liability company, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> CITY OF LOS ANGELES HARBOR DEPARTMENT; et al., <br><br> Defendants-Appellees. | No.   21-55416 <br><br> D.C. No. 2:20-cv-03251-PSG-MAA <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, Chief District Judge, Presiding

Argued and Submitted March 17, 2022
San Francisco, California

Before:  CHRISTEN and BRESS, Circuit Judges, and LYNN,[**] District Judge.

Appellant Harbor Performance Enhancement Center, LLC appeals the

district court's order dismissing appellant's action against appellees City of Los

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Barbara M. G. Lynn, Chief United States District Judge for the Northern District of Texas, sitting by designation.

Angeles ("the City") and City of Los Angeles Harbor Department ("the Port") (collectively, "the city defendants") and appellees International Longshore and Warehouse Union ("ILWU") and ILWU Local 13 (collectively, "the union defendants"), under § 1 of the Sherman Act, 15 U.S.C. § 1; Section 8(b)(4) of the National Labor Relations Act ("NLRA"); 42 U.S.C. § 1983 (for violation of Section 8(b)(4) of the NLRA); and other claims related to breach of contract. We have jurisdiction under 28 U.S.C. § 1291, and we affirm. Because the parties are familiar with the facts of this case, we need not recite them here.

1. The district court did not err in dismissing appellant's Sherman Act and NLRA claims against the union defendants pursuant to the *Noerr-Pennington* doctrine.

Petitioning conduct is immunized from statutory liability pursuant to the *Noerr-Pennington* doctrine if: (1) the lawsuit at issue imposes a burden on petitioning rights; (2) the alleged conduct forming the basis of the lawsuit constitutes protected petitioning activity; and (3) the relevant statute can be construed to preclude the burden on protected activity. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 930 (9th Cir. 2006). All three prongs are satisfied here.

The first prong is satisfied because imposing Sherman Act and NLRA liability on the union defendants for their alleged communications and interactions

2

with the Port will plainly burden these activities, and appellant does not argue otherwise. *See id.* at 932-33.

The second prong is satisfied because the union defendants' alleged conduct was directed at influencing the Port or was conduct incidental to influencing the Port to direct drayage jobs to the union defendants. *Cf. id.* at 933-37; *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1058-62 (9th Cir. 1998); *Franchise Realty Interstate Corp. v. S.F. Loc. Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1080-81 (9th Cir. 1976). Although "the *Noerr* doctrine does not extend to every concerted effort that is genuinely intended to influence governmental action," *FTC v. Superior Ct. Trial Laws. Ass'n*, 493 U.S. 411, 424-25 (1990) (internal quotation marks omitted), here, the Second Amended Complaint alleges only that ILWU made non-concrete statements in negotiations with appellant and with the Port about possible, but not imminent, labor unrest.

Petitioning conduct is not protected by the *Noerr-Pennington* doctrine if the conduct falls within the "sham exception." *Kottle*, 146 F.3d at 1060. The sham exception has limited application in the context of lobbying an agency with "extremely broad standards governing the exercise of that body's discretion," and its "scope is limited to situations where the defendant is not seeking official action by a governmental body, so that the activities complained of are 'nothing more'

3

than an attempt to interfere with the business relationships of a competitor." *Franchise Realty*, 542 F.2d at 1079, 1081; *see City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 381 (1991). Appellant concedes the city defendants have wide discretion, and there is no question the union defendants were acting to advance their own pecuniary interests rather than merely trying to thwart a competitor.

The third prong is satisfied because Section 8(b)(4)(ii) of the NLRA and § 1 of the Sherman Act may be construed to exclude the union defendants' petitioning conduct. 29 U.S.C. §§ 158(b)(4)(ii)(A), (B), and (D) of the NLRA generally prohibit labor organizations from threatening, coercing, or restraining any person to force or require that person to do or cease doing business with any other person. Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. Appellant fails to cite controlling or persuasive authority that has held a defendant liable pursuant to the NLRA or the Sherman Act for lobbying conduct analogous to the ILWU's conduct in this case, namely, non-concrete statements directed at government officials that did not indicate that any imminent actions would be taken. To the contrary, controlling authority suggests that neither statute "unavoidably" or "clearly" covers the union defendants' conduct. *See Sosa*, 437

4

F.3d at 931, 940; *see, e.g.*, *Kottle*, 146 F.3d at 1058-62 (Sherman Act); *Sessions Tank Liners, Inc. v. Joor Mfg., Inc.*, 17 F.3d 295, 299-300 (9th Cir. 1994) (Sherman Act); *cf. Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575, 583-84 (1988) (citing First Amendment concerns and reading Section 8(b)(4) not to cover handbilling aimed at persuading a mall's proprietor to influence a tenant to quit dealing with a nonunion contractor, because the statutory provisions and legislative history indicated no clear intent to reach handbilling).

2. The district court did not err in dismissing appellant's § 1983 claim against the city defendants. To bring a § 1983 claim, the plaintiff must assert, among other things, "the violation of a federal right." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989). Regarding the § 1983 claim brought pursuant to the NLRA, the Supreme Court has held that the NLRA "creates rights in labor and management both against one another and against the State." *Id.* at 109. In other words, the NLRA "specifically confer[s rights] on employers and employees." *See id.* at 109 n.6, 112. As the district court correctly determined, "HPEC is neither labor nor management" as to the ILWU, and

5

appellant does not identify a federally protected right the NLRA affords to it.[1]

3. The district court did not err in dismissing appellant's breach of contract claims related to the Amendment to the underlying Exclusive Negotiating Agreement (ENA) ("the Amendment") or the two Memoranda of Understanding ("the MOUs") that the parties negotiated.

Regarding the Amendment, Paragraph 5 states that it is effective "upon execution by the Executive Director and Secretary of City's Board of Harbor Commissioners after approval of the City Council of the Resolution Approving this First Amendment." Appellant does not dispute that the City Council never approved the Amendment. Instead, appellant argues that the city defendants are bound by equitable estoppel. In particular, appellant alleges that the Port's Executive Director and Deputy City Attorney approved the Amendment, promised to obtain formal Board approval, and acted as though the Amendment was effective.

To allege equitable estoppel, appellant must allege that it was "ignorant of the true state of facts." *Santos v. L.A. Unified Sch. Dist.*, 226 Cal. Rptr. 3d 171,

---

[1] Appellant urges us to apply the NLRA's broad definition of "employer" found in 29 U.S.C. § 152(2). As the Supreme Court stated in *Golden State*, however, "Section 1983 speaks in terms of 'rights, privileges, or immunities,' *not violations of federal law*." 493 U.S. at 106 (emphasis added).

181 (Cal App. Ct. 2017) (quoting *Christopher P. v. Mojave Unified Sch. Dist.*, 23 Cal. Rptr. 2d 353, 357 (Cal. App. Ct. 1993)). In the Second Amended Complaint, appellant alleged the opposite—that the city defendants informed appellant the Amendment needed further approval. Indeed, the contractual provision requiring the City Council's approval was found on Paragraph 5 of the Amendment, which appears on the same page as the signature page that appellant signed. *See also Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 567 (9th Cir. 2014) ("[A] party cannot avoid the terms of a contract by failing to read them before signing.").

Regarding the MOUs, appellant points out that California employs a "permissive approach to extrinsic evidence" in which the test of admissibility of "extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the contract is reasonably susceptible." *Barris Indus., Inc. v. Worldvision Enters., Inc.*, 875 F.2d 1446, 1450 (9th Cir. 1989) (quoting *Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 442 P.2d 641, 644 (Cal. 1968)).

Appellant argues that the district court failed to consider any of the other provisions in the MOUs, the underlying ENA, the city defendants' post-execution

7

conduct, and its alternative argument that the MOUs can be construed as contracts to negotiate in good faith, which are enforceable under California law.

We are not persuaded. Appellant's claim for breach of the MOUs is entirely derivative of the underlying ENA because any duty to negotiate in good faith would have terminated when the ENA was terminated. Because the Amendment never went into effect to extend the underlying ENA, the ENA terminated on January 5, 2018 (18 months after July 5, 2016) at the latest. Appellant fails to specifically allege how the city defendants' pre-January 5, 2018 conduct breached the MOUs. In addition, appellant disavowed its entitlement to damages for breach of the MOUs because it agreed to "be responsible for its own costs and expenses, including the costs and expenses of counsel, accountants and advisors incurred in connection with the transactions referred to [in the MOUs] (whether or not consummated)."

**AFFIRMED.**