Filed 6/23/26  Tran v. Garden Grove Unified School Dist. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| EDWIN TRAN et al., | |
| Plaintiffs and Appellants, | G064637 |
| v. | (Super. Ct. No. 30-2022-01276273) |
| GARDEN GROVE UNIFIED SCHOOL DISTRICT et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Sheila Recio, Judge. Affirmed in part, reversed in part, and remanded.

NT Law and Julie N. Nong for Plaintiffs and Appellants.

Thompson & Colegate, Susan Knock Beck, Michael J. Marlatt and Trevor D. Debus for Defendants and Respondents.

Plaintiffs Edwin Tran and his minor daughter challenge the trial court's dismissal of their claims against defendants, Garden Grove Unified School District and three district employees. The court sustained defendants' demurrer, concluding plaintiffs had failed to comply with claim-presentation requirements under the Government Claims Act (GCA; Gov. Code, § 900 et seq.).[1] Alternatively, it determined that each of plaintiffs' causes of action failed for various reasons.

We conclude plaintiffs sufficiently complied with the GCA. And although the court properly sustained the demurrer as to most of plaintiffs' claims, we conclude the daughter alleged a sufficient claim of intentional infliction of emotional distress (IIED). We therefore affirm in part and reverse in part.

FACTS

I.

THE INCIDENTS

According to the operative complaint, when the daughter was 12 years old and a seventh-grade student at one of the district's schools, her math teacher "abusively 'yelled'" at her for taking inadequate notes. Weeks later, the teacher falsely accused the daughter of cheating on an exam, offering little evidence. When the daughter rejected the accusation, the teacher "intimidated, threatened and bullied" her for 20 minutes within earshot of other students. Both the teacher and the vice principal then "broadcast[]" the incident to other students.

The following day, Tran spoke with the teacher, who became angry when Tran asked for details about the accusation. After the call, the

---

[1] Undesignated statutory references are to this code.

daughter described both the earlier yelling incident and the teacher's conduct after the cheating accusation.

The next morning, Tran spoke with the principal and reported that the daughter had "anxiety and depression" and was "mentally traumatized" because of the teacher's conduct. (Cleaned up.) The principal disregarded Tran's concerns but asked to speak with the daughter so he could investigate the cheating allegations.

The daughter arrived at the principal's office with her mother but the principal instructed the mother to wait outside. Inside the office, the principal and vice principal proceeded to "grill[]" the daughter for 40 minutes, "twisting [her]] words" and trying to force a confession, even as the "mortif[ied]" daughter maintained her innocence.

Ultimately, the daughter received a zero for her test. When Tran complained to the school district, the school retaliated by giving the daughter failing grades in all her classes, reversing this decision after Tran complained again. As a result of defendants' conduct, the daughter suffered "great pain of mind and body, shame, humiliation, and emotional distress," was unable to return to school, and experienced "long lasting" trauma.

II.

ADMINISTRATIVE COMPLAINTS WITH THE DISTRICT

Tran contacted the district's assistant superintendent for K-12 Education Services "individually and on behalf of [the daughter]" to ask about filing a complaint for GCA purposes. The assistant superintendent directed Tran to another district employee, who provided Tran with a "**Formal Complaint Form**." The form allowed the complainant to identify the relevant parties, describe the alleged wrongful conduct, and state the

3

requested solution. The employee directed Tran to send his form to the district, attention of the Office of Personnel.

Using the district-provided form, Tran submitted complaints against the principal, the vice principal, and the teacher to the district, demanding written apologies. About four months after the incidents, following an investigation, the district decided that the evidence did not substantiate the allegations. The district's director of personnel informed Tran that the district would take no corrective action.

Tran responded shortly after by e-mailing the director of personnel and the assistant superintendent of personnel, accusing the district of mishandling his complaints and threatening "legal action": "I will take legal action . . . if the complaint is not addressed correctly. The court will provide a fair and unbiased conclusion for my family's pain and suffering." The next day, after receiving a dissatisfactory response, Tran again wrote that the family had "no choice but to seek legal remedies" and asked that "all records pertaining to my complaint be kept in their original content for civil litigation."

## III.

### THIS ACTION

After the district did not satisfy Tran's demands, he and the daughter—through Tran as her guardian ad litem—sued the district, the principal, the vice principal, and the teacher, asserting claims for violations of the Education Code, intentional infliction of emotional distress, and negligent supervision of the teacher. They cited section 815.2, asserting the district was vicariously liable for its staff's misconduct.

The trial court sustained defendants' demurrer to a first amended complaint, concluding that plaintiffs had insufficiently alleged

4

compliance with the GCA. It granted plaintiffs leave to amend for that purpose.

Plaintiffs filed a second amended complaint, adding allegations about the administrative complaints and Tran's e-mail. They also added a cause of action for negligent infliction of emotional distress. Defendants demurred, asserting that plaintiffs failed to state any claims and have not shown compliance with the GCA, among other grounds.

In a thorough seven-page ruling, the trial court sustained the demurrer without leave to amend. It concluded plaintiffs still failed to show compliance with the GCA, reasoning that Tran's administrative complaints did not put the district on notice that he is attempting to file a claim or that litigation would result if the matter is not resolved.

The court alternatively concluded that each cause of action failed for other reasons: (1) the cited Education Code provisions provided no right of action against public employees; (2) the complaint did not adequately allege outrageous conduct, severe emotional distress, or intent to cause distress for purposes of an IIED claim; (3) the allegations did not establish that school officials had prior knowledge of the teacher's alleged unfitness, as required for a negligent supervision claim; and (4) plaintiffs had not received leave to add a claim for negligent infliction of emotional distress. The court dismissed the action with prejudice.

## DISCUSSION

### I.

#### PLAINTIFFS SUFFICIENTLY COMPLIED WITH THE GCA

We review an order sustaining a demurrer de novo. (*Genis v. Schainbaum* (2021) 66 Cal.App.5th 1007, 1014.) We assume the truth of

properly pleaded factual allegations and draw all reasonable inferences in favor of their sufficiency. (*Id.* at p. 1015.)

Under the GCA, a plaintiff may not sue a public entity for "money or damages" unless a timely written claim is first presented to the entity. (§§ 905, 945.4.) Failure to submit a timely claim also bars suit against an employee of the entity for acts within the scope of employment. (§ 950.2.)

The GCA's purpose is to allow the public entity to "'adequately investigate claims and to settle them, if appropriate, without the expense of litigation.'" (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738.) To that end, a claim must include certain information, such as the amount claimed (if under $10,000) or whether it would be a limited civil case (if over $10,000). (§ 910.)

At the same time, the GCA is not intended to serve as "a trap for the unwary claimant." (*Ebersol v. Cowan* (1983) 35 Cal.3d 427, 435.) If a submission fails to substantially comply with the GCA's requirements, the entity must notify the claimant of the deficiencies "with particularity." (§ 910.8.) Such submissions are sometimes called "'trigger[] claim[s].'" (*Simms v. Bear Valley Community Healthcare Dist.* (2022) 80 Cal.App.5th 391, 401 (*Simms*).)

Contrary to defendants' contentions, notifying the claimant of deficiencies after receiving a trigger claim is not discretionary: "Section 910.8 requires the board of a public entity, or its designee, to give a claimant notice of a defective claim." (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 988, fn. 5.) A trigger claim creates a "'duty by the public entity to notify the potential claimant of the claim's insufficiency.'" (*Simms, supra,* 80 Cal.App.5th at p. 401.) If the entity fails to provide the required

6

notice, it waives any defense based on the claim's procedural insufficiency. (§ 911.)

To qualify as a trigger claim, the communication must "'put[] the public entity on notice both that the claimant is attempting to file a valid claim and that litigation will result if the matter is not resolved." (*Simms, supra*, 80 Cal.App.5th at p. 401.) In *Simms*, for example, a patient's letter to the hospital was deemed a trigger claim because it threatened "'a lawsuit for restitution'" if his demands were not met. (*Id.* at pp. 400, 402.)

Tran's communications with the district constituted a sufficient trigger claim. The administrative complaints did not substantially comply with the GCA—for instance, they did not address the amount of any claim. (See § 910.) But Tran's subsequent e-mail informed the district both that plaintiffs were pursuing a claim and that litigation would follow if the matter remained unresolved. Tran said he would "take legal action" and "seek legal remedies," asked that the district preserve records "for civil litigation," and asserted that the "court [would] provide a fair and unbiased conclusion for [his] family's pain and suffering." As in *Simms*, this was enough to constitute a trigger claim and require the district to inform plaintiffs of any deficiencies.

Defendants' attempts to distinguish *Simms* are unpersuasive. True, unlike the patient's letter in *Simms*, Tran's e-mail did not expressly mention damages. But his reference to "legal remedies" and "pain and suffering"—a classic component of tort recovery—was sufficient to alert the district that monetary relief would be sought. (See *Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 893 ["mental suffering frequently constitutes the principal element of tort damages"].)

Nor does *A.S. v. Palmdale School District* (2023) 94 Cal.App.5th 1091 assist defendants. The plaintiff's submissions there made no reference

to litigation—"'the most essential element of a [trigger claim].'" (*Id.* at pp. 1099, 1100.) Here, by contrast, Tran expressly threatened to "take legal action."

Similarly unconvincing are defendants' contentions that various procedural missteps meant that Tran's communications were not trigger claims. First, defendants point to no authority supporting their suggestion at oral argument that the 12-year-old daughter herself was required to file a GCA claim. Tran—the daughter's parent and guardian ad litem—presented claims concerning the district's treatment of the daughter. And he did so after inquiring with the district on behalf of himself *and* the daughter about filing a GCA claim. This was sufficient. (See § 910.2 [claim shall be signed by claimant "or by some person on his [or her] behalf"].)

Second, the district cannot be heard to complain that Tran did not address his claims to the appropriate district body or officer. Tran inquired with a senior district official, was provided a district form, and reasonably relied on the district's instruction where to submit it. The district may not shield itself by claiming the instructions it provided were wrong. (See *Santos v. Los Angeles Unified School Dist.* (2017) 17 Cal.App.5th 1065, 1077 [school district estopped from arguing GCA claim was misaddressed because district-police lieutenant directed plaintiff how to file claim].) Third, the lack of an official rejection of Tran's claim by the district's board is immaterial. The claim was deemed rejected 45 days after Tran submitted it. (§ 912.4, subds. (a) & (c) [board's failure to act on claim within 45 days deemed rejection].) Finally, Tran submitted his trigger claim about four months after the incidents and thus did not need to apply for leave to file a late claim, contrary to defendants' suggestion. (§ 911.2, subd. (a) [personal injury claim must be submitted within six months of accrual].)

Because plaintiffs submitted a timely trigger claim, the district was required to notify them of any deficiencies. (§ 910.8.) Its failure to do so waived any defenses based on noncompliance with the GCA's procedural requirements. (§ 911.)

## II.

### THE DAUGHTER SUFFICIENTLY ALLEGED AN IIED CLAIM

An IIED claim requires a showing that (1) the defendant engaged in outrageous conduct; (2) the defendant either intended to cause emotional distress or acted with reckless disregard for the probability of doing so; (3) the plaintiff suffered severe emotional distress as a result. (*Yau v. Allen* (2014) 229 Cal.App.4th 144, 160.)

The complaint sufficiently alleged each element.

First, the complaint alleged conduct that a jury could find outrageous. Liberally construed, it described a multi-day campaign of pressure and humiliation by school staff, directed at a 12-year-old student subject to their authority and continuing after she showed signs of distress. (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1122 [conduct may be outrageous if defendant abuses authority and recognizes that plaintiff is susceptible to distress].)

According to the complaint, the ordeal started with the teacher "abusively" yelling at the daughter for trivial reasons. It continued with unsupported accusations of cheating, shared with other students, and a prolonged episode of intimidation. When the daughter maintained her innocence, school administrators questioned her for 40 minutes, without her parents present, "grill[ing]" her and pressuring her to confess. And when her father complained, the school retaliated against her by giving her failing grades in all her classes, before reversing this action. Courts have held less

9

egregious conduct to support a finding of outrageousness. (E.g., *Bundren v. Superior Court* (1983) 145 Cal.App.3d 784, 791–792 [abusive payment demand made to post-surgical patient under implied threat of losing care].)

Second, the allegations support a reasonable inference of defendants' required mental state. For this purpose, "[i]t is enough that [a] defendant 'devoted little or no thought' to the probable consequences of his conduct." (*KOVR-TV, Inc. v. Superior Court* (1995) 31 Cal.App.4th 1023, 1031–1032.) Here, the complaint alleged repeated and escalating offensive acts against a 12-year-old student, continuing after staff was informed that she had developed "anxiety and depression" and while she was "mortif[ied]" during an interrogation by staff. These allegations support an inference that defendants gave no meaningful consideration to the probability of causing the daughter distress.

Finally, the complaint alleged sufficiently severe emotional distress resulting from defendants' actions. In evaluating this element, we may look at the nature, extent, and duration of the alleged distress. (*Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1227.) The complaint alleged that the daughter experienced anxiety, depression, mortification, shame, and humiliation; that she was unable to return to school; and that she suffered "long lasting" trauma. No more is needed. (See *Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1614 [sufficiently severe distress where plaintiff "became frightened and began shaking" during 10-minute confrontation with aggressive, threatening individuals].) Accordingly, the complaint stated a viable IIED claim.[2]

---

[2] The district does not dispute that it can be held vicariously liable for this claim, if valid, based on its staff's conduct. (See § 815.2, subd. (a).)

## III.

### PLAINTIFFS' OTHER CLAIMS FAIL

The trial court properly sustained the demurrer as to plaintiffs' claims for violations of the Education Code, negligent supervision, and negligent infliction of emotional distress.

The court concluded, and plaintiffs do not dispute, that the Education Code provisions plaintiffs invoked do not create a right of action against individual public employees. Plaintiffs therefore cannot state a claim under these provisions against the individual defendants. As for the district, plaintiffs sought to hold it vicariously liable for its staff's actions, but that liability can exist only if the employees themselves would be held liable. (§ 815, subd. (a).) So plaintiffs fail to state a claim against the district as well.

The fact that—as plaintiffs note—defendants' demurrer did not assert these specific grounds is irrelevant. An objection that the complaint fails to state a claim cannot be forfeited. (Code Civ. Proc., § 430.80, subd. (a).) "[A] defendant may raise at any time . . . the fundamental and fatal defect that a plaintiff has not stated in his complaint facts sufficient to constitute a cause of action against that defendant." (*Majestic Realty Co. v. Pacific Lighting Corp.* (1974) 37 Cal.App.3d 641, 643.) The parties have now had an adequate opportunity to address these grounds on appeal.

Plaintiffs, on the other hand, have forfeited their new contention that the statutory provisions cited nevertheless established a standard of care, allowing them to bring negligence claims against the individual defendants. Their opening brief offers no meaningful discussion of the relevant provisions and does not show they can support a valid negligence claim. (*WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 155 (*WA Southwest 2*) [review on demurrer limited to issues

11

adequately raised and supported in opening brief].) Similarly forfeited is their reply brief's new theory that the statutes create a mandatory duty supporting liability under section 815.6. (*WA Southwest 2, LLC*, at p. 155.)

Plaintiffs' negligent supervision claim also fails. Liability under this theory requires a showing that the defendant knew or should have known that the employee posed a particular risk of the harm and that the harm later materialized. (*Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 815.) Plaintiffs fail to point to any fact that should have alerted the district to dangerous propensities by the teacher before her alleged misconduct. They claim the district should have known about those propensities because Tran raised concerns about her when speaking with the principal after the cheating allegations. Yet they identify no misconduct by the teacher after Tran raised those concerns. So they cannot show that any risk of harm materialized after the school should have known about it.

Finally, plaintiffs impermissibly added their claim of negligent infliction of emotional distress without leave to do so. (*Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1023 [plaintiff generally may not add cause of action without obtaining leave].) Plaintiffs' contentions to the contrary are unsupported by citations to authority and are therefore forfeited. (*WA Southwest 2, supra*, 240 Cal.App.4th at p. 155.)

DISPOSITION

The trial court's dismissal of plaintiffs' claims for violations of the Education Code, negligent supervision, and negligent infliction of emotional distress is affirmed. Its dismissal of the daughter's IIED claim is reversed

12

and the matter is remanded for further proceedings. The parties shall bear their own costs on appeal.

SCOTT, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


GOODING, J.